UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDERNESS WORKSHOP, *et al.*,<br><br>     Plaintiffs,<br> v.<br><br>MERYL HARRELL, *et al.*,<br><br>     Defendants,<br> and<br><br>BERLAIMONT ESTATES, LLC,<br><br>     Defendant-Intervenor. | Civil Action No. 23-678 (JMC) |

## MEMORANDUM OPINION AND ORDER

In March 2023, the United States Forest Service ("Forest Service") approved the construction of a road to provide year-round vehicular access to a privately owned parcel of land within the White River National Forest.[1] Plaintiffs Wilderness Workshop and Rocky Mountain Wild—two non-profit organizations based in Colorado—brought this action under the Administrative Procedure Act (APA), challenging that decision. In response, Defendants have moved to transfer the case to the District of Colorado, which they contend is a more appropriate venue to decide this dispute. ECF 16. Berlaimont Estates, LLC—the Colorado-based corporation that owns the land in question—intervened in support of Defendants and supports the Motion to Transfer. ECF 17. Although the Court agrees with Defendants that venue would be proper in the

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

District of Colorado, it declines to transfer the case. The Court finds that there is a meaningful connection between the controversy and the Plaintiffs' preferred jurisdiction, and that any private interests that would be served by transferring the case are too insubstantial to outweigh the deference accorded to Plaintiffs' choice of venue. Accordingly, the Motion to Transfer is denied.

I.    BACKGROUND

Berlaimont Estates, LLC is the owner of a 680-acre parcel of land that is entirely surrounded by the White River National Forest in Colorado. ECF 15-1 ¶¶ 137–38, 145. In 2015, Berlaimont submitted a proposal to the Forest Service, asking the agency to begin environmental review of Berlaimont's plan to construct a year-round access route to the parcel, *id.* ¶ 151, where Berlaimont plans to develop nineteen luxury vacation homes, *id.* ¶ 20. In 2020, the Forest Service released a Final Environmental Impact Statement (FEIS), which was prepared by a team of the White River National Forest staff under the supervision of Scott Fitzwilliams, the Forest Supervisor for the White River National Forest, stationed in Colorado. ECF 16 at 11 (citing FEIS at 3). On March 10, 2023, the Forest Service released a Final Record of Decision (FROD) approving the project. *Id.* at 9, 11 (citing FROD at 3–4). The FROD, like the FEIS, listed Ms. Fitzwilliams as the responsible official. Plaintiffs filed their Complaint in this case three days after its release. ECF 1.

Much of the controversy surrounding the Berlaimont project has been local in nature. Both Plaintiffs are Colorado-based non-profits. The agency's decisionmaking process included the solicitation and consideration of hundreds of public comments, many of which came from local parties, including the local region of the Environmental Protection Agency, Colorado Parks and Wildlife, the Eagle County Board of County Commissioners, the Governor of Colorado, and both of Colorado's U.S. Senators. ECF 16 at 10–11 (citing FEIS, App'x D). Moreover, according to the Amended Complaint, many of the anticipated negative impacts of the project are also local. Those

impacts include disturbing wildlife, ECF 15-1 ¶¶ 154, 156–57, increasing the flow of traffic on area roads, *id.* ¶ 155, interfering with recreational activities enjoyed by residents of the region, *id.* ¶ 158, and putting local people and property at increased risk from forest fires, *id.* ¶ 159.

Nonetheless, Plaintiffs chose to file suit in this Court. They allege that high-ranking agency personnel located in Washington, D.C. were "directly involved" in "authorizing, directing, and carrying out the underlying agency actions." ECF 18 at 2. In support of that contention, Plaintiffs have submitted intra-agency emails about the Berlaimont project that were sent between Colorado and D.C. personnel, *see* ECF 18-1 at 1–38, 145–46; evidence that both the Secretary of Agriculture and the Chief of the Forest Service commented on the project, *see id.* at 75, 222; and documentation showing that the Chief of the Forest Service visited Colorado and discussed the project with local officials, *see* ECF 18-2 at 20. Plaintiffs have also shown that Berlaimont's counsel sought out multiple meetings with D.C. officials to plead Berlaimont's case, ECF 18-1 at 1, 207–08, 216, 218, and later corresponded with those same officials to agitate for the release of the FROD, ECF 18-9 at 51–61. Finally, Plaintiffs contend that the case turns on the interpretation of a federal statute, a purely legal question with nationwide implications. ECF 18 at 3.

That brings the Court to the substance of the Complaint. Plaintiffs claim, under the APA, that the Forest Service's approval of the Berlaimont project should be set aside (and any construction be enjoined) because of various deficiencies in the approval process. ECF 15-1 at 70. Plaintiffs' principal argument is one of statutory interpretation. Specifically, Plaintiffs argue that a key provision of the Alaska National Interest Lands Conservation Act (ANILCA)—a federal statute that the Forest Service interpreted to apply to all lands in the National Forest System, and thus to require improved access to Berlaimont's property in Colorado—applies only to National Forest Service lands in Alaska. *Id.* at ¶¶ 190, 204. Plaintiffs also argue that—even assuming

3

ANILCA applies in Colorado—the existing access to Berlaimont's property was enough to support the "reasonable use and enjoyment" of the land. *Id.* ¶ 194 (quoting 16 U.S.C. § 3210). In addition, Plaintiffs contend that reasonable alternatives were excluded from the analysis in the FEIS, *id.* ¶ 212, that the FROD was biased and based on undue influence on Washington decisionmakers, *id.* ¶¶ 175–77, and that the process was improperly rushed (and documents unreasonably withheld) to avoid public scrutiny of certain environmental issues, *id.* ¶¶ 178–86, 265.

This is not the first lawsuit related to the Berlaimont project. In 2022, Berlaimont filed a claim in the District of Colorado seeking to compel issuance of the FROD, which it alleged had been unreasonably delayed. *See Berlaimont Estates, LLC v. U.S. Forest Serv.*, 22-cv-2300 (REB) (D. Colo.), ECF 1. That case was voluntarily dismissed when the FROD was released in March 2023, before the agency had filed a substantive response to Berlaimont's claim. *See* 22-cv-2300 (REB) (D. Colo.), ECF 22. In addition, Plaintiffs have filed two FOIA claims in this jurisdiction, both of which are currently pending before this Court. *See Wilderness Workshop v. Dep't of Agric.*, 21-cv-2108 (JMC); *Wilderness Workshop v. Dep't of Agric.*, 22-cv-3606 (JMC). Those cases seek information related to the Berlaimont FEIS and the involvement of various officials in the decisionmaking process, presumably in anticipation of litigation precisely like this.

On April 26, 2023, Defendants filed a Motion to Transfer this case to the District of Colorado, pursuant to 28 U.S.C. § 1404(a). ECF 16. Berlaimont submitted a Response in favor of transfer. ECF 17. Plaintiffs filed a Response in opposition. ECF 18. Defendants replied. ECF 21.

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Section 1404 provides the Court with a mechanism to transfer a case, even in cases where venue is proper in the transferor court, in order "to prevent the waste of time, energy

and money[,] and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

The Court employs a two-step analysis to determine whether a case should be transferred. First, the Court determines if the case could have been brought in the transferee district. *S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 234 (D.D.C. 2012). If so, the Court turns to an analysis of the public and private interests supporting transfer. The private interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Pres. Soc'y of Charleston v. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012). The public interest factors include: (1) "the local interest in having local controversies decided at home;" (2) whether judicial efficiency would be affected by "the transferee's familiarity with the governing laws" and/or the pendency of related litigation in the transferee court; and (3) "the relative congestion of the calendars of the transferor and transferee courts." *Id.*; *see also Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 723 F. Supp. 2d 14, 27 (D.D.C. 2010).

### III. ANALYSIS

Neither Party appears to dispute that venue is proper both in this Court and in the District of Colorado. *See generally* ECF 16; ECF 18. The Court therefore moves to the second part of the analysis—weighing the public and private interest factors for and against transferring the case. Based on those factors, the Court determines that it should defer to Plaintiffs' choice of venue. Accordingly, the Motion to Transfer is denied.

#### A. The private interest factors weigh against transfer.

The first of the private interest factors, the plaintiff's choice of forum, "is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should

rarely be disturbed." *Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985) (citing *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955)). A case should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *S. Utah Wilderness v. Norton*, No. CV 01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002) (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980)). That general rule of deference, however, has one important proviso. The deference afforded to a plaintiff's choice of forum is diminished where "that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001).

According to Defendants, this is such a case. They characterize the Berlaimont decision as a land management decision about land in Colorado, signed off on by officials based in Colorado, primarily impacting Colorado residents. ECF 16 at 21, 24. As for any connection between the District of Columbia and the controversy, Defendants emphasize that both Plaintiff-organizations are headquartered in Colorado. *Id.* at 23. They also argue that Plaintiffs have failed to show any real involvement in the decision by D.C. officials, other than those officials' general authority over agency decisions and the fact that the agency is headquartered here. *Id.* at 24–25. Indeed, other courts in this jurisdiction have transferred cases after finding that the controversy lacks a meaningful connection to the District of Columbia—even where the agency in question is headquartered here. *See, e.g.*, *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 97–99 (D.D.C. 2013); *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 54–55; *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996).

The Court disagrees. There are key differences between this case and those cited by Defendants that lead the Court to conclude that there is a meaningful connection here. Most

importantly, the threshold issue in this case is the interpretation of a federal statute—a legal question with the potential to affect the administration of national forests throughout the country. *See Greater Yellowstone Coal.*, 180 F.Supp. 2d at 129 (declining to transfer a case that turned on the interpretation of a federal statute in part because the question had "national significance"). Moreover, the White River National Forest, as part of the National Forest System, is a national resource, "dedicated by the Congress in trust for the recreation and enjoyment of the American people." *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 752 (D.C. Cir. 1988). It is situated on federally owned land and overseen by a federal agency. *Cf. Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000) (finding that a controversy involving the National Petroleum Reserve planning area in Alaska was not local in character because the reserve is a "national resource" implicating "national policy decision[s]"). That distinguishes this case from controversies involving resources that are situated on private property, *see Kinsella v. Bureau of Ocean Energy Mgmt.*, No. CV 22-2147 (JMC), 2022 WL 16852674, at *1 (D.D.C. Nov. 10, 2022), or on state-owned land, *see Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 57. Finally, although the record suggests that the decision to approve the Berlaimont project was spearheaded and ultimately signed off on by officials located in Colorado, Plaintiffs have submitted evidence of involvement by D.C. officials that goes beyond a general advisory role. There is evidence that D.C. officials were actively consulted on the decision, publicly commented on the project, and even visited Colorado to check in on the process. *Cf. id.* at 52 ("Plaintiffs allege no specific involvement by decisionmakers at the Corps' headquarters in Washington, D.C."); *Wilderness Soc'y*, 104 F. Supp. 2d at 14 (D.C. official's visit to the area in question and public commentary on the decision weighed against transfer). It also appears that Berlaimont itself believed that the agency's D.C. officials had enough authority over the decision that they targeted their advocacy towards those

officials. That involvement by D.C. officials, when taken in combination with the national policy implications of the case, are enough to create a meaningful connection to the District.

The second and third private interest factors—unlike the first—weigh slightly in favor of transfer. However, they do not outweigh the Court's deference to Plaintiffs' choice of venue. The second private interest factor (defendant's preference) weighs in favor of transfer, even more so because the transferee district is also Plaintiffs' home jurisdiction. *See New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010). That said, while a defendant's choice of forum is relevant to deciding a motion to transfer, it is "not ordinarily entitled to deference" in cases where the plaintiff's preferred district has a meaningful connection to the case. *Tower Labs, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018). The third private interest factor also weighs in favor of transfer. In considering where a claim arose, both the location of the decisionmaking process and the location of the impacts of the project are considered. *See Ctr. for Env't. Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357–58 (D.D.C. 2014). Here, it appears from the record before the Court that the bulk of the decisions were made in Colorado, and many of the particularized impacts of the project will be felt in Colorado. On the other hand, as discussed above, Plaintiffs have shown that D.C. officials were also involved in the decision, and that many of the broader implications of the case are national in character. Based on those mitigating circumstances, the Court gives limited weight to the third private interest factor here.

As for the remaining private interest factors—the convenience of the parties, the convenience of the witnesses, and the ease of access to sources of proof—those factors weigh neither in favor of nor against transfer. That is because this is an APA case, centering on a matter of statutory interpretation, that will likely be decided at summary judgment on the basis of the

8

administrative record. There is no reason to expect a trial, or witnesses, or the need for extra-record evidence. *See Greater Yellowstone Coal. v. Kempthorne,* Nos. 07-cv-2111, 07-cv-2112, 2008 WL 1862298, at *4 (D.D.C. 2008). Moreover, even in the unlikely event that those things should become necessary, there is little reason to believe that this Court is a much less convenient forum for either party, especially given that Defendants are headquartered here.

In summary, the Court finds that Plaintiffs have established a meaningful connection between the case and their preferred forum, such that their choice of forum is entitled to deference. Therefore, though the second and third factors tilt slightly in favor of transfer, because of the substantial deference afforded to Plaintiffs' choice of forum, the Court concludes that the private interest factors—considered together—weigh against transfer.

### B. The public interest factors also weigh against transfer.

The Court begins with the public interest factor on which many transfer cases appear to turn—the "local interest in having local controversies decided at home" so that concerned members of the affected population can engage with the proceedings. *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 57. Applying that principle, other courts in this jurisdiction have opined that, in general, controversies involving "water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people whose rights and interests are in fact most vitally affected." *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 19–20 (D.D.C. 1996). This Court recently endorsed that proposition in *Kinsella*, 2022 WL 16852674, at *2. In that case, the Court transferred a case to the Eastern District of New York where the plaintiff challenged the approval of an offshore windfarm and cable project located in that district, *id.* at *1, 4, finding that the project "directly affect[ed] the rights of residents of the transferee district, while having no impact at all on the residents of the District of Columbia," *id.* at *2.

9

This case is similar to *Kinsella* in that the predicted impacts of the project-in-controversy would be felt most directly by local residents. *See* ECF 15-1 ¶¶ 154–59. However, there are important differences that distinguish this case from *Kinsella*. Some of those differences were discussed above. Plaintiffs here contend that this case turns on the interpretation of a federal statute, which is a question of national significance. *See Greater Yellowstone Coalition*, 180 F. Supp. 2d at 129. The White River National Forest, as part of the National Forest System, is a national resource that is held in trust for the American people, imbuing this controversy with national policy implications. *Cf. Wilderness Soc'y*, 104 F. Supp. 2d at 13. Moreover, unlike in *Kinsella*, this case does not appear to turn on any issues of state or local law, or to be contingent on a parallel approval process at the state level. *Cf.* 2022 WL 16852674, at *1, 2. In summary, this is not the kind of local controversy that would weigh in favor of transfer, particularly where the Plaintiffs' chosen jurisdiction has a meaningful connection to the controversy.

Turning to the second public interest factor, another key difference between this case and *Kinsella* is that in *Kinsella* there was another lawsuit already in progress in the transferee court, challenging the same project on some of the same grounds, based on a similar administrative record. 2022 WL 16852674, at *3. Indeed, in *Kinsella* the transferee court had already taken evidence and ruled on a motion for a preliminary injunction, denying the same relief the plaintiff sought in this Court. *Id.* That, together with the issues of state law that were implicated in that case, led the Court to find that judicial economy would be better served by transferring the case to the court that had already developed expertise as to the law and subject matter at hand. *Id*. Here, there are no analogous parallel proceedings. The 2022 case that was brought by Berlaimont in the District of Colorado was voluntarily dismissed before that Court had occasion to engage with the substance of the controversy. *See Berlaimont Estates*, 22-cv-2300 (REB) (D. Colo.), ECF 22.

Moreover, this case does not appear to involve any question of state law. *Cf. Trout Unlimited*, 944 F. Supp. at 19 (transferring a case in part because "it may . . . involve the interpretation of [state] law"). In other words, this is a case that involves the interpretation and application of federal law, and all federal courts are presumed to be equally competent to interpret federal law. *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006). Nor does it make a difference, at least to the question of whether to transfer the case, that the transferee court has already commented on the statutory interpretation question presented here. *See Rocky Mountain Wild v. Dallas*, No. 19-CV-01512-CMA, 2020 WL 1529181, at *3 (D. Colo. Mar. 31, 2020) (citing *United States v. Jenks*, 22 F.3d 1513, 1516 n.3 (10th Cir. 1994)). This Court is perfectly capable of reading and interpreting the statute in light of relevant authority.

As for the third public interest factor, Plaintiffs emphasize, and Defendants appear to acknowledge, that the transferee court's docket is more congested than this Court's. ECF 18 at 23; ECF 21 at 13. Therefore, the third public interest factor also weighs slightly in favor of denying the Motion to Transfer. All in all, the Court finds that the public interest factors—like the private interest factors—weigh against transfer.

Because the Court finds that there is a meaningful connection between the controversy and this jurisdiction, and that any private interests that would be served by transferring the case are too insubstantial to outweigh the deference accorded to Plaintiffs' choice of venue, the Motion to Transfer is denied.

## IV.   CONCLUSION

The Court DENIES Defendants' Motion to Transfer the Case to the District Court for the District of Colorado.

**SO ORDERED.**

DATE: June 8, 2022

11

                                                                                                                     _____
                                                                                                                     Jia M. Cobb
                                                                                                                     U.S. District Court Judge