IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No. 1:23-cv-00678-JMC

WILDERNESS WORKSHOP, ROCKY MOUNTAIN WILD,
    Plaintiffs,

  v.

MERYL HARRELL, CHRIS FRENCH, SCOTT FITZWILLIAMS, FRANK BEUM, TAMARA ANGEL, UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES FOREST SERVICE,
    Defendants,

BERLAIMONT ESTATES, LLC,
    Defendant-Intervenor.

---

## DECLARATION OF WILLIAM ROUSH

---

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is William ("Will") Roush and I am of legal age and competent to give this declaration. All information herein is based on my own personal knowledge unless otherwise indicated.

2. I am a member of Wilderness Workshop and the Executive Director at Wilderness Workshop. I've been employed by Wilderness Workshop since 2012, and I've been a member for even longer.

3. As Executive Director I work with the Board of Directors to set the strategic direction for the organization, and with the staff to develop specific campaign plans and goals for our conservation work. I have oversight of the organization budget, personnel, public land conservation goals, and day-to-day functioning.

4. Wilderness Workshop is a 501(c)(3) corporation with a mission to protect the wilderness, water, and wildlife of Western Colorado's public lands. We are a membership organization with more than 700 members, including many in the Eagle Valley.

5. Wilderness Workshop has engaged in the Berlaimont Estates access road process since the project was proposed and I have made the decision to allocate significant organizational resources and staff capacity to the process. We first wrote comments to the U.S. Forest Service in 2009 and continued to participate in the process at every opportunity.

6. Wilderness Workshop engaged with passionate community members. We educated members, local residents and the public, organized opposition, gathered support from elected officials and decision-makers, and we worked to facilitate public engagement in the public process at every point possible.

7. Our members and staff use and enjoy the public lands around the Berlaimont project area for various kinds of recreation, including hiking, dog walking, bike riding, wildlife watching, and skiing. Our members and staff also use the area for hunting, photography, and to enjoy the scenery and aesthetic values it retains.

8. Throughout the process, Wilderness Workshop staff and I periodically received stories from members about meaningful experiences and wildlife encounters they had on the public lands that would be impacted by the proposed Berlaimont Estates access road. We also received photos from our members depicting wildlife that rely upon those public lands.

9. Some Wilderness Workshop members rely upon the area for water production, and retain water rights in the same streams that would be impacted by the Berlaimont road and by development of Berlaimont Estates.

10. Wilderness Workshop also led hikes and educational excursions on the public lands surrounding the Berlaimont inholding. Some of these were led and attended by local members who use and enjoy the area regularly.

11. In March of 2019, Wilderness Workshop also cosponsored an educational discussion and a rally in opposition to the Berlaimont road proposal. The events were well attended and covered in local press.[1] I attended the discussion and rally and was impressed by the broad and near universal community support for protecting the Berlaimont area, the detailed knowledge many community members had about the area's ecological and community values, and the passion and commitment community members shared to stop the construction of the proposed Berlaimont Estates access road.

12. Throughout our long engagement in this decision-making process, our members' interests in the area's ecological values have been clear and evident. As we've engaged our membership in the various public comment periods for this proposed road and the Berlaimont Estates project, our members' interest in maintaining the high quality and increasingly rare habitat value in the Berlaimont area has been the most common concern articulated.

13. Wilderness Workshop member, and former district wildlife manager for Colorado Parks and Wildlife's Eagle District, Bill Heicher summed up the wildlife-related concerns beautifully when he said: "The situation for local wildlife populations is dire. We can't keep approving new roads and development in sensitive habitat and expect wildlife to persist. The dramatic population declines we've witnessed are a result of those same decisions. In the long term, the paved road, additional developed recreation, new parking lots and the new subdivision

---

[1] See Pam Boyd, Buck Berlaimont march, rally attracts large crowd Saturday in Edwards, Vail Daily (March 17, 2019), available at https://www.vaildaily.com/news/buck-berlaimont-march-rally-attracts-large-crowd-saturday-in-edwards/.

will directly destroy important habitat and encourage far deeper penetration into a fragile ecosystem that barely sustains the native species today. In short, the Forest Service is creating a sacrifice zone in Edwards for development and recreation. To most of us, that is unreasonable and unacceptable."

14. Tim Wolf, another Wilderness Workshop member articulated similar concerns: "Perhaps the biggest problem with this proposal, raised by nearly everyone who has engaged, is the impact it will have on the wildlife. Winter habitat is a limiting resource for deer and elk populations. They need it to survive Colorado's coldest and snowiest months. Today the Forest Service gave a greenlight to a new road through critical winter range for a luxury subdivision that'll require hundreds of vehicle trips every day, year round. It is like a stake through the heart of some of the last best habitat we've got in the valley. It is bad policy and bad precedent."

15. Another Wilderness Workshop member, Christie Hochtl described concerns related to the risk of fire: "We are in a 22-year drought, one of the two driest periods in the last 1,200 years. If a wildfire sparked near a new luxury Berlaimont home, firefighters, such as my own daughter-in-law, would likely be called to the remote site. I would hate to see her lose her life saving a home that should have never been built in the first place. Putting these homes high up on a fire prone hillside, at the end of the road, so far from first responders, is a bad idea. However, fire risk is just one of the issues that makes this project so unreasonable."

16. Yet another Wilderness Workshop member, Andy Wiessner, described the extraordinary public opposition to this proposal: "The Forest Service completely ignored the public and their own land management plan in making this decision. For the Forest Service to defy nearly unanimous public opposition and allow a paved road in prime deer and elk winter range is beyond troubling and confounding. It reflects a public be damned attitude."

17. After the Final Environmental Impact Statement (FEIS) was released in 2020, dozens of engaged community members, including many Wilderness Workshop members, filed formal objections to the plan and the agency's analysis. Wilderness Workshop deserves much credit for the level of community engagement in this process. We worked hard to educate, inform, and activate our members and members of the public.

18. Throughout the process, it was abundantly clear how unreasonable and damaging to the community and ecology the Berlaimont Estates proposal really is. Thousands of people opposed the project in comments, formal objections, and by actively marching in protest. Whether it's due to the impact on declining wildlife populations, because it will put more people and expensive homes in the path of wildfire, or because the development is so much more grandiose than what typifies inholdings—this approval sets a terrible precedent.

19. Wilderness Workshop and our members have made clear that the Forest Service's decision fails to protect public lands and wildlife, while ignoring the public and defying informed and logical consideration of the record.

20. Wilderness Workshop members have been outspoken and active in informing the Forest Service of their well-informed opposition to this project. We have sent action alerts to our members during every comment period, and our members have consistently engaged, raising valuable concerns and questions that the Forest Service still has not adequately responded to or resolved. Some of the most frequent concerns expressed by our members include these:

    a. <u>Buyer beware</u>: The Berlaimont owners bought this land knowing full well ("buyer beware") that the parcel had only seasonal, dirt road access across the Forest. Berlaimont also knew that the road was closed in winter by the White River Forest Plan to protect critical deer and elk winter range. Berlaimont now wants the Forest

Service to bail out their bad investment by allowing pavement and year-round vehicular access that violates the Forest Plan. Our members have consistently asked: Why is it appropriate to amend a longstanding Forest Plan by granting a road permit that violates that Plan? Many of our members engaged in the Forest Planning process and supported the decision to close the Berlaimont area to cars and trucks in the wintertime for the benefit of wildlife. They ask why the Forest Service is disregarding its own decision, which is supported by years of consideration and public engagement, to facilitate a speculative real estate development that the public broadly opposes.

b. <u>Precedent</u>: Members have asked me, if a buyer who bought land knowing it had only seasonal, dirt road access is granted permission for a paved road under ANILCA, doesn't that set a bad precedent for using ANILCA to overturn/end run the National Forest Management Act planning process and damage our public lands to maximize private profit? And, my answer: yes, it does. There are a great many other inholdings in our area serviced by seasonal dirt roads that are closed to cars and trucks in the winter. And this decision may very well motivate real estate speculators or owners of inholdings to demand paved, year-round access to those parcels to maximize buildout potential and profit. Such development could be very detrimental to the wildland values on public lands that Wilderness Workshop works to protect.

c. <u>Reasonable Use</u>: A more reasonable use of Berlaimont's land might be 19 summer homes, cabins, or tent sites accessed by a dirt road. That might be consistent with the Forest Plan and similar to existing developments inside the White River National Forest at Woods Lake, Piney Lake, Shrine Mountain, and Fulford, among others.

Another question we've heard: ANILCA requires "adequate" access to an inholding for "reasonable use." In this case, access already exists for reasonable use. Why isn't a seasonal dirt road "adequate" access? Indeed, our review of the record shows that access was good enough to support the owner's purchase of the property, and every other inholding examined by the Forest Service has dirt and/or seasonal access.

d. <u>Dirt road access:</u> There is ample precedent for granting only dirt road access to the Berlaimont Estates inholding. Neither ANILCA or FLPMA require the Forest Service to grant access across our public land for any use of the land that a developer may envision. Rather, the Forest Service only need provide "adequate" access for a "reasonable use" of the land. And the agency is required to minimize those impacts. Our members have asked: Why isn't a seasonal dirt/gravel road to Berlaimont's land "adequate" for "reasonable use"? It is what existed when Berlaimont bought its land. Seasonal dirt access is what characterizes nearly all of the inholdings the Forest Service examined in its analysis, including the Lake Agnes parcel the Forest Service said was most similar. Indeed, the Forest Service has never provided an adequate answer to this question.

e. <u>Wildlife</u>: Wildlife in the Berlaimont area will be severely jeopardized by the developer's request for a paved road and 200+ new car trips per day. According to Colorado Parks and Wildlife officials, by mid-winter, many deer and elk struggle to conserve enough calories to survive. Just one or two adverse encounters with vehicles, humans or dogs can literally mean the difference between life or death. The Forest Service admits this. Wilderness Workshop members have asked: Isn't 200+ trips per day through an area that experts and the public agree should be closed for the

protection of declining wildlife populations unreasonable? Doesn't that render this whole proposal unreasonable?

f. <u>New trails/snowmobile parking:</u> In conjunction with the Berlaimont road request, the Forest Service is approving new trails, and a new snowmobile parking area and trailhead in Berry Creek, in the heart of some of the Valley's last best winter range. Wilderness Workshop members have asked: Why is the Forest Service adding insult to injury by approving this damaging new road through sensitive wildlife habitat while also facilitating increased use of the area? In response, I can only agree that the Forest Service has done little to minimize the environmental impacts of this decision. Rather it seems the Forest Service's intent is to sacrifice this important winter wildlife habitat despite the knowledge that it will have damaging effects on local wildlife and despite so much public opposition.

g. <u>Migration corridor:</u> The proposed paved access road would sever a critical migration route for the second largest migrating deer herd in Colorado. Our members have consistently advocated for protection of this migration corridor, and articulated concerns about the impacts the proposed road would have on migrating wildlife.

h. <u>Impacts on declining wildlife populations:</u> Over the course of this project, we've worked with passionate Wilderness Workshop members; many are longtime residents of the Eagle Valley who have seen sensitive habitat developed and degraded by human use and development facilitated by Forest Service management and approvals. These folks have argued that the Berlaimont proposal is unreasonable due to the contributary impacts it will have on declining wildlife populations in the area. Many feel their concerns have fallen on deaf ears.

      i. <u>Public opposition:</u> One engaged Edwards resident and Wilderness Workshop member, Howard Leavitt, summed up the whole process best after the Forest Service issued its final decision: "Public opposition to this project is extraordinary. Thousands commented and signed petitions opposing the project. Dozens of us took the time to review the FEIS in detail and to file formal objections. Even senior USFS officials noted several flaws in the analysis and recommended revisiting several issues. But, the FEIS published today was, literally, the same FEIS released before the objection period—word for word. No changes were made based on our objections. The indifference shown toward protecting this critical habitat and the thousands of citizens' comments and objections is extremely disappointing and disheartening."

21. Throughout the process, Wilderness Workshop made numerous important points, some of which I've included below. These points were not seriously considered by the Forest Service in the Environmental Impact Statement or Record of Decision that attempts to correct deficiencies in the agency decisionmaking process through an "addendum."

22. This project is proposed in the Eagle Valley, on a south facing hillside that provides some of the last best winter wildlife habitat in the area. The project proponent is a land speculator who knowingly purchased a limited-access parcel more than a decade ago. The property has seasonal access on dirt roads—which is the same level of access that characterizes nearly all of the other inholdings the agency found and discussed. Wilderness Workshop's members enjoyment of wildlife that is dependent on the public lands in and around the Eagle Valley has been severely impacted by development of the best winter range. Much development has been induced by Forest Service approvals of Special Use Permits, including the operation of Vail Resorts' Ski Areas, which are operated on the National Forest.

23. Under Eagle County "driveway" standards the proponent could construct up to three homesites on the parcel, but the developer has asked the Forest Service for year-round paved access to support construction of 19 mansions (with 9 accessory units) on the property.

24. To approve this scheme, Eagle County agreed to grant a variance, but the Forest Service must accede to granting a utility corridor and paving public lands that provide critical wildlife habitat and amending the Forest Plan, which was in effect when the developer purchased this property, to eliminate seasonal wildlife closures in place to protect this outstanding, remaining winter habitat.

25. In fact, this is not an inholding that requires additional access. This parcel has existing and historic access. Further, potential access options exist that prevent application of ANILCA. Additionally, Wilderness Workshop's review of agency records confirms that Berlaimont Estates failed to obtain easements from owners of private parcels, but the records contain no detailed information on the efforts made to obtain access that would minimize impacts on National Forest System lands.

26. The Lake Agnes inholding used by the Forest Service to justify approval of Berlaimont's proposal is NOT "comparable." First, the USFS approved access to Lake Agnes with a completely different law, FLPMA rather than ANILCA—begging questions about why FLPMA wasn't considered in this case. Also, the Lake Agnes road lies in gentle terrain, and has <u>zero</u> pavement (gravel surface only), and <u>no</u> switchbacks, <u>no</u> cut and fill, <u>no</u> retaining walls and <u>no</u> difficult terrain. Further, the Lake Agnes road is not in critical deer and elk winter range. By contrast, access to Berlaimont requires grading and paving extremely rugged terrain, and numerous cut and fill banks, retaining walls, switchbacks, and the like, all cutting through sensitive winter range and bisecting a critical migration corridor.

Berlaimont's road is substantially longer and involves much more vertical rise than the Lake Agnes access. If the Forest Service believes that Berlaimont is so comparable to Lake Agnes, why didn't the agency consider using the same law to approve access? Why doesn't the agency limit the road surface to gravel only? Pavement across the National Forest at Berlaimont will dramatically increase vehicular trips in the area and be very disruptive to wildlife in critical winter range, as indicated by the agency's own experts.

27. One of the biggest problems with this proposal is the impact it will have on wildlife. Winter wildlife habitat is a limiting resource for deer and elk populations. This is the habitat that deer and elk need to survive Colorado's coldest and snowiest months. During wintertime, deer and elk persist on starvation rations. They rely on areas where snow accumulations are low, where there may still be some forage and browse, and where they can shelter without disturbance. Every calorie counts for these animals during the winter. Reduced forage or unnecessary disturbances can be the difference between life and death.

28. Wildlife populations in the Eagle Valley are in a crisis of decline. Populations of deer and elk have dropped by more than 50% in recent decades. Experts agree that increased pressure from year-round recreation and development are the primary causes for this decline.

29. Now the Forest Service is proposing to approve a project that will exacerbate existing problems and add to damage already done by Forest Service approvals and other development in the area. The agency's decision fails to take meaningful action to protect the natural resources that the agency is charged to protect.

30. Here the Forest Service is relying on a reasonable use determination which ignores the weight of evidence demonstrating that the Berlaimont Estates proposal is not a reasonable use of this private inholding. That reasonable use determination contaminated the rest of the

Forest Service's analysis, and an order requiring the Forest Service to conduct an entirely new analysis and decision process based on applicable public land laws is likely to address the procedural and substantive harms to Wilderness Workshop and its members that I describe in this declaration.

31. We raised issues related to ANILCA, FLPMA, NFMA, and NEPA. The issue that contaminates the whole process, though, is the agency's reasonable use determination. The body of evidence analyzed by the Forest Service indicates that what Berlaimont has proposed is nothing like most inholdings. Rather than following this data to the logical conclusion that reasonable use of an inholding may be substantially less grandiose than what developers want, the Forest Service chose to focus on

32. The Forest Service arbitrarily ignored key differences between Lake Agnes and Berlaimont's proposal. The agency also arbitrarily ignored other relevant criteria that were critically important to its reasonable use determination, and which weigh strongly against its conclusion. Our comments and our formal objection describe these errors in detail, but the gist is this: the reasonable use determination is fatally flawed, and it is the basis upon which this entire analysis relies.

33. The agency ignored critical factors in its reasonable use determination and relied on other factors and analysis that do not support its conclusions. The agency's Draft Record of Decision included an indecipherable addendum, not subject to public or agency review, that attempted to rescue the Environmental Impact Statement and Draft Record of Decision from serious deficiencies identified in comments and pre-decisional objections filed by Wilderness Workshop and numerous members. Implementing the proposed action based on the existing record would violate the law and the agency's mission.

34. The procedural and substantive failures we identified and that were identified by Wilderness Workshop members during the process undermined the purpose and need, the consideration of alternatives and impacts, and put the agency on a course that made it impossible to minimize impacts as required by law and regulation.

35. The interests of Wilderness Workshop and its members can be resolved by a judicial finding that the myriad issues we've identified in comments require the ROD and FEIS to be set aside, and an order requiring the agency to start anew based on a new application and unbiased analyses. Absent a new process, the only action that could eliminate our concerns would be adoption of the No Action Alternative and a decision confirming that access to this parcel is adequate as is.

Under penalty of perjury, I swear the foregoing is true and correct.

Dated: 7/5/23

_William Roush_ (signature)

William Roush