IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No. 1:23-cv-00678-JMC

WILDERNESS WORKSHOP, ROCKY MOUNTAIN WILD,
    Plaintiffs,

  v.

MERYL HARRELL, CHRIS FRENCH, SCOTT FITZWILLIAMS, FRANK BEUM, TAMARA ANGEL, UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES FOREST SERVICE,
    Defendants,

BERLAIMONT ESTATES, LLC,
    Defendant-Intervenor.

---

## DECLARATION OF WILLIAM R. HEICHER

---

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is William R. Heicher. I go by Bill. I am of legal age and competent to give this declaration. All information herein is based on my own personal knowledge unless otherwise indicated.

2. I currently reside at 641 Wall St., Eagle, Colorado 81631 which is in Eagle County. I have lived in Eagle County for the past 51 years.

3. I am a member of Wilderness Workshop.

4. I am a 1970 graduate from Colorado State University with a B.S. in Wildlife Management.

5. After spending 3 seasons working in a U.S. Forest Service Hot Shot crew, I was employed by the Colorado Division of Wildlife (CDOW) for 32 years.

6. I worked for CDOW from July 1971 to August 2003 and retired as District Wildlife Manager for the Eagle District. My career, as a Colorado District Wildlife Manager, was spent in the Eagle Valley, Eagle County, State of Colorado.

7. Between 2003 and 2011, I worked for the Town of Eagle as its first Open Space Coordinator. I served on the Eagle Town Council from 1994 to 2002, presiding as Mayor Pro-Tem between 1998 and 2002.

8. I also served on the board of directors for the Western Eagle County Metropolitan Recreation District (1994-2002, 2 years President), Eagle River Watershed Council (2003-2006), Eagle County Planning Commission (2005-2013, 4 years Chairman & Co-Chairman), and Eagle County Open Space Advisory Committee (2005-present).

9. In my 51 years in the Eagle Valley, I have seen dramatic changes. Most notable to me with my educational and professional focus on wildlife, have been the changes in wildlife populations, wildlife migrations, and in the quality of habitat in the area. During the first 23 years, 1972-1995, I spent a large portion of my time trapping, tagging & monitoring the deer, elk, bear & mountain lion inhabitants in the Eagle Valley. Emphasis was on determining population dynamics, movement & migration patterns, population sizes, and defining critical habitats. This information was then used to inform and educate local, state and federal decision makers in order to assist their land use decisions on all matters concerning these wildlife populations. I also spent considerable time studying and documenting the success and/or failures of these decisions. I also analyzed any wildlife mitigation measures that may have been required. It is my professional opinion, that in the Eagle Valley, there has not been

a successful wildlife mitigation plan for ungulates, deer, elk & bighorn sheep, that was implemented and actually offset the negative wildlife impacts brought about by the change in land use. Thus, I have spent 51 years observing ungulate populations of wildlife significantly decrease in the Eagle Valley. Despite the declines and impacts I have witnessed, I continue to enjoy and value the time I spend observing wildlife in the Eagle Valley, and have definite plans to continue enjoying the wildlife and landscapes the Berlaimont Estates project would further impact.

10. When I first started my career in the Eagle Valley we discovered the main mule deer migration corridor ran from near the top of Vail Pass to almost Dotsero, CO. This corridor was on the north side of the Eagle Valley (now north of I-70) and was approximately 3-5 miles wide. The Berlaimont proposal will pave a road right through the middle of it. This migratory deer herd was estimated to be the second largest migratory deer herd in the nation (Piceance Creek near Meeker, CO was #1). Over the course of the last 50 years this deer migration corridor and the actual numbers of animals using it, has been reduced to less than 50% of what it was. This decline is due to the loss of habitats from actual development (houses, roads, golf courses, transmission lines, etc.) and associated impacts from loss of solitude, fragmentation of habitat and harassment from people, trails, mountain bikes, snowmobiles, dogs, off road motorized vehicles, x-country skiing, snowshoeing, etc. Meanwhile the elk populations in the Eagle Valley were increasing until 2008 when it was noticed the numbers were dropping on a continual basis. This was caused by the same factors affecting the mule deer populations but with an increased emphasis on dispersed recreation during breeding, wintering, calving and seasonal migrations. The elk populations have

decreased more than 50%, and possibly as much as 65%. These deer & elk decreases are all in and around the area of the proposed Berlaimont development.

11. I have visited the area around the proposed Berlaimont development during my entire time in the Eagle Valley, both in an official capacity as a District Wildlife Manager and as a local member of the public enjoying the opportunity to hunt, fish, observe nature & wildlife and to enjoy an area that is relatively undisturbed. If the proposed Berlaimont development is allowed to proceed the above opportunities, I so much enjoy, will be lost and more serious wildlife losses will occur. Hopefully, and with relief requested by the lawsuit filed by Wilderness Workshop and Rocky Mountain Wild, I will be able to continue to visit this and the activities that I've long enjoyed in the area for many years to come.

12. I've also participated thoroughly in the Berlaimont decision process. Most recently, I submitted a formal objection to the U.S. Forest Service's proposed decision to approve the Berlaimont Access Road. But I also drafted numerous comment letters.

13. As a career wildlife officer in Eagle County, I spent decades safeguarding wildlife. My work was often thwarted by Forest Service decisions, pivots, conflicting messaging, and unsuccessful mitigation. Even after I retired as a wildlife officer I continued to advocate for wildlife in the face of the many pressures and impacts placed on them.

14. Over the years, I observed decision after decision placing recreation and development interests above wildlife needs. The recent Berlaimont decision is a prime example of the pro-development culture of the White River National Forest and their less than minimal regard to the wildlife resources. I have concluded that biases favoring private development proposals over the stated purposes of the National Forest System color all aspects of the White River

National Forest decisionmaking, and those biases will continue until remedied by judicial findings and effective court orders.

15. The Forest Service bases its case for paving the road to Berlaimont on the Alaska National Interest Lands Conservation Act (ANILCA), a law related to federal management of public lands in Alaska with a provision intended to give people with inholdings inside Alaska National Forests adequate access for "reasonable use and enjoyment" of that property for subsistence and related uses. The Forest Service says this law forces its hand and requires approval to pave miles of existing dirt road to the Berlaimont property … because the owner wants to build 19 luxury estates on the 640-acre parcel.

16. The proposed development is an overreach of the ANILCA intention. Even if the law applied in Colorado, which is doubtful at best, "reasonable use and enjoyment" does not equate to speculative development and profiteering in the millions of dollars, certainly not at the expense of sustaining wildlife on public lands.

17. To support this errant use of ANILCA, the Forest Service bypassed consideration of comparable inholdings within the White River National Forest — local treasures like Homestake Creek, Deep Creek, Piney Lake, Fulford, and Woods Lake, where wildlife thrives and people have winter access via snowmobile, cross-country skiing, and snowshoe. Instead, the Forest Service found one case, not nearly as remote as Berlaimont, on the Routt Forest, and used this flimsy example as a reason to roll over for a developer.  I am confident that if the Court orders a competent and unbiased analysis that considers public input, the Forest Service will find dozens, and perhaps hundreds, of inholdings that are reasonably used and enjoyed with less access than Berlaimont Estates obtained when purchasing the parcel.

18. The road itself is an immense barrier to wildlife, bisecting the second largest migration area in the state. The cut-and-fill road building across these steep hillsides will require high and long retaining walls that extend for hundreds of feet. This is the equivalent of building giant cliffs throughout a migratory path. The result will be death and carnage.

19. Further, paving the road requires amending the Forest Plan to remove critical wildlife habitat protections. Is this because the plummeting deer and elk numbers have suddenly recovered? No, the numbers are still down as much as 65%.

20. The tons of 95/5% sand/salt mix needed to keep the paved road safe in winter will leave a salty residue, attracting animals to the road. The heat of the pavement will melt the snow and grow the first green shoots in spring, further drawing the animals in and risking a high mortality rate. Instead of demanding viable wildlife crossings or a road that does not require chemical-based maintenance, the Forest Service offered low speed limits to save the wildlife from road dangers. Nothing in the analysis supports the effectiveness of these mitigation measures. Plus, with the developer bias, who will enforce non-binding mitigation measures?

21. The second largest impact on wildlife here is a human recreation. With Berlaimont, the Forest Service prioritizes this activity above the sustainability of wild nature. From 2013-2016, the Forest Service and Colorado Parks and Wildlife spent three years and thousands of dollars enhancing sage grouse habitat and deer/elk critical winter habitat near Berlaimont. Now, by some convoluted reasoning, the Forest Service is proposing a new multi-use recreation trail right through the heart of this habitat restoration to accompany the private development proposal.

22. The decision calls on the developer to enforce seasonal closures on White River National Forest land surrounding Berlaimont. How will the Forest Service enforce accountability for

these closures? Similarly, how does the Forest Service plan to enforce the many other aspects of mitigation called for — revegetation, wildlife closures, weeds? In my years of field work, I have not seen such mitigation measures work to offset the impacts on ungulates, including deer, elk, and bighorn sheep. The Forest Service, in the Eagle Valley, has a dismal record of policing or follow through on their commitments and responsibilities.

23. In the long term, the paved road, enhanced recreation, parking lots and new recreation trail will encourage far deeper dispersed recreation that penetrates into a fragile ecosystem that barely sustains the native species today. In short, the Forest Service is creating a sacrifice zone in Edwards for more development and recreation that has been induced by its previous approvals of private development that relies on use and occupancy of the National Forests.

24. I advocated for the Forest Service to choose the "no action" alternative. I think adequate access exists on this parcel for reasonable use.

25. If the Forest Service engages in good faith, communities, recreational users and Colorado Parks and Wildlife could work together to protect the public lands in the area and the wildlife that depend on those lands.

26. I fear that a paved road to Berlaimont Estates will surely be the final cut to the herds of deer and elk that are suffering death by a thousand cuts.

27. Over the years, I've spent lots of time on public lands in the Berry Creek area that would be paved over for this proposed road. I hope this road is never built and I can continue my current use and enjoyment the area as I have for so many years. If the road is built, I'm not sure I'll return. We've already lost so much, losing this too may be more than I could bear.

Under penalty of perjury, I swear the foregoing is true and correct.

Dated: 7/4/23

_____

William R. Heicher