IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No. 1:23-cv-00678-JMC

WILDERNESS WORKSHOP, ROCKY MOUNTAIN WILD,
        Plaintiffs,

    v.

MERYL HARRELL, CHRIS FRENCH, SCOTT FITZWILLIAMS, FRANK BEUM, TAMARA
ANGEL, UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES
FOREST SERVICE,
        Defendants,

BERLAIMONT ESTATES, LLC,
        Defendant-Intervenor.

---

**DECLARATION OF HOWARD LEAVITT**

---

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is Howard Leavitt and I am of legal age and competent to give this declaration. All information herein is based on my own personal knowledge unless otherwise indicated.

2. I am a member of Wilderness Workshop.

3. I currently live in Edwards, Colorado, very near the proposed Berlaimont development.

4. I have lived in the Eagle Valley for 48 years. In that time, I've seen dramatic changes in the Valley.

5. Over those years the Eagle River Valley and the surrounding mountains have seen a massive increase in the amount of second home development and related activity, encroaching upon and affecting areas critical to wildlife and their normal pattern of activities, including

breeding, wintering, and migration. Much of this development, particularly luxury housing projects, is induced by increased use and access to the National Forests, especially Forest Service permitted uses, such as the Vail Ski Resort.

6. I have been using and enjoying the public lands around the Berlaimont parcel for most of my 48 years living in the area. As an avid hiker, mountain biker and hunter, I am very familiar with the area and have personally observed a precipitous decline in not only the deer and elk population, but also in the numbers of dusky grouse and sage grouse. This is an area of extreme natural beauty and diversity, which I've been privileged to enjoy and to share with my family, and hope to continue enjoying for many years to come. I fear that the increased degradation that would result from this road and the ensuing development would accelerate an already critical decline in this magnificent resource for both the wildlife and those who benefit from the recreational opportunities.

7. I've also participated thoroughly in the Berlaimont decision process. Most recently, I submitted a formal objection to the U.S. Forest Service's proposed decision to approve the Berlaimont Access Road. But I also drafted numerous comment letters.

8. My comments discussed concerns related to my personal use of the project area, the condition of existing roads, speculation and real estate development, wildlife impacts, wildlife population declines, the No Action Alternative, direct impacts of the road, multiple use, exclusion of the public, recreation, historic use, property rights, and applicable regulations.

9. In addition to providing public comment to the Forest Service on this project, I also had numerous conversations and communications with agency officials. I have penned letters to the local paper, attended meetings and rallies in opposition to the project, and I joined State

Senator Kerry Donovan and numerous other locals in presenting a petition with more than 2,400 signatures to Forest Service officials in 2018. People continued to sign the petition for months afterward, and we presented an updated petition to the Forest Service with more than 4,000 signatures in 2019.

10. One of the most troubling aspects of this whole process has been the Forest Service's disregard for the broad-based show of public opposition. For example, the Forest Service failed to even consider the nearly unanimous community opposition to this project in its reasonable use determination. See "other relevant criteria" considered in Appendix C of the FEIS (failing to consider public opposition). If ever there was an "other relevant criteria" worth considering as you contemplate the reasonableness of a particular use, I'd say that the amount of public opposition fits the bill. Especially, when that use necessitates changing the Forest Plan that the public helped craft and pay for, and eliminating critical wildlife closures that the public supports and that are more necessary now than ever before because of development, like Berlaimont Estates, that has destroyed the best historic winter wildlife habitat. I would benefit from the Court's remedy of the Forest Service's failure to consider broad-based public opposition to the Berlaimont proposal in its reasonable use determination. The agency should revise that determination and give proper weight to this relevant criteria, because failure to do so in this case undermines the whole process and the agency's mission.

11. Another big concern of mine has been about the law that the U.S. Forest Service is relying upon to approve this damaging new road.

12. The Alaska National Interest Lands Conservation Act, more commonly known as ANILCA, is the basis for Berlaimont developers to claim a right to several miles of new paved road

across public lands north of Edwards, Colorado that I use and enjoy, and that provide critical wildlife habitat.

13. The act was passed by Congress in 1980 "to preserve for future generations certain lands and waters in the State of Alaska that had nationally significant values, including areas important for wildlife, subsistence, wilderness, recreation, scientific, scenic and historic reasons." It makes no sense to me that this law is being used in Colorado.

14. The guidelines of this Alaska-specific legislation provided for "adequate" access across public and protected lands to existing mining claims and private properties within those lands "for reasonable use and enjoyment." The term "reasonable use" is critical.

15. The Berlaimont developers bought a property that already had adequate access for subsistence and other the types of reasonable use and enjoyment as contemplated for Alaskans in ANILCA. I understand that the parcel had been abandoned numerous times due to lack viability for developing the amenities required by clientele of nearby Aspen and Vail. The obvious gap between adequate access for reasonable uses and unlimited access for a luxury development was ignored by National Forest Service officials, who have now approved a plan to pave our public lands to facilitate speculators' profit. It's really that simple.

16. Ignoring, literally, thousands of signatures and many hundreds of comments decrying the negative impacts of this project from individuals; independent wildlife and conservation experts; Colorado Parks and Wildlife; and local, regional, state and federal officials. The deciding officer blatantly disregarded direction from his own Forest Service superior to address and correct overlooked and flawed aspects of the Environmental Impact Statement.

17. The Forest Service's very own Forest Plan identified most of the area surrounding the development as "critical winter habitat." So critical as to require a seasonal closure in order to protect the many species of wildlife that depend upon it for winter range and migration. My interests in the protections contained in the Forest Plain have been overlooked, ignored, and injured by agency officials willing to cavalierly throw known wildlife science to the wind to facilitate their bias toward use of National Forests to facilitate private development and the associated increase of sprawl in the backcountry.

18. Even worse, this decision will set a damaging precedent that will open the floodgates for others seeking to leverage this legislation to maximize private gain, likely at the expense of even more critical habitat and wilderness across the West and on National Forest lands throughout the country. The Berlaimont Estates proposal is unreasonable and the upgraded access is unconscionable in light of the impacts that would befall the National Forests, and persons such as me that continue to enjoy the surviving wildlife and undeveloped character of the National Forest.

19. The Forest Service's failure to consider public input and important criteria in its reasonable use determination renders this whole analysis arbitrary and capricious and necessitates that the agency restart the process based on a new application and a new slate, without the bias and errors contained in the existing analysis and approval. Consideration of criteria including public opposition and consistency with public land management laws as well as impacts to public lands and wildlife are necessary prerequisites to any conclusion about the reasonableness of this proposed use. That, of course, should inform what alternative forms of access might be adequate and all of the impact analysis required by NEPA.

20. I intend, and have definite plans, to keep hiking, hunting, and riding on the public lands surrounding the Berlaimont parcel regularly.  My interest in this area would be profoundly harmed if it is paved over and the values that I use and enjoy in the area no longer support my interests.  I believe that if the Court ordered the Forest Service to conduct a lawful and unbiased analysis, the resulting decision would protect my interests in the National Forest that would be irreversibly damaged by the decisions being challenged.

Under penalty of perjury, I swear the foregoing is true and correct.

Dated: 7/4/23

_____

Howard Leavitt