**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

I.    Introduction
II.   Why an ANILCA Determination is needed prior to a NEPA Analysis and Decision
III.  Reasonable Use of Private Property - Methodology of Analysis
IV.   Reasonable Use of Private Property – Results of Analysis / Findings
V.    Adequate Access - Determining What is Appropriate for the Berlaimont property
VI.   Conclusion

Addendum A – Relevant Statute and Administrative Regulations *[bottom of this document]*
Addendum B – Table for Analysis of Similarly Situated Lands *[separate attachment]*
Addendum C – Map series - Analysis of Similarly Situated Lands *[on O  drive at...]*
        O:\NFS\WhiteRiver\Program\2700SpecialUsesMgmt\2730Road&TrailROWGrants\HolyCrossR
        D\Berlaimont_Estates.LLC\2014-17 re-application\ANILCA determination\Similarly situated
        analysis_170323 (maps)

**Commented [MAW-1]:** Changed this to 'addendum' because this whole document will be an appendix. Need to make sure the Table and Map reflect this change.

**I.    INTRODUCTION**

The Forest Supervisor of the White River National Forest (WRNF) has accepted an application from Berlaimont Estates LLC (applicant), wherein the applicant is requesting an easement for improved access to their 680-acre private property just north of Edwards, Colorado. This property is entirely surrounded by National Forest System (NFS) lands. Such "landlocked" properties are known as inholdings. The applicant asserts, and the Forest Service agrees, that the agency is legally obligated to provide access to the Berlaimont property across NFS lands. More precisely, Section 1323(a) of the Alaska National Interest Lands Conservation Act (ANILCA) requires the Forest Service to provide access to private inholdings adequate to secure the owner reasonable use and enjoyment of that inholding property. Implicit in this requirement is the need for the agency to make a determination as to what constitutes "adequate access". Documenting that determination is the purpose of this letter.

The Forest Supervisor is the "authorizing officer" for the Berlaimont Estates project. When an authorizing officer must make a determination of adequacy for access, a review of statutory law, agency regulations, and case law provides insight and guidance. A sequence of intermediate steps must be made in order to reach the final determination of adequacy that is consistent with law. These steps include (1) establishing the proper temporal relationship (sequential vs concurrent) between the determination of adequate access under ANILCA and the decision on the proposed action under the National Environmental Policy Act (NEPA), (2) analyzing properties that are similarly situated to the applicant's private inholding, (3) considering whether the applicant's plans for the private inholding constitute a reasonable use, and finally (4) determining the nature of access that must be granted in order to achieve adequacy.

Each of these steps is explored in greater detail below as they relate to the Berlaimont Estates project.

18-CV-887-29467

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

II.    **Why an ANILCA Determination is needed prior to a NEPA Analysis and Decision**

The ANILCA statute's requirement to provide access across NFS lands to private inholdings is codified in agency regulations at 36 CFR 251 Subpart D. [See Addendum A.] These regulations provide guidance for implementing the statute's intent.

Included in 36 CFR 251 Subpart D is a requirement that any approved access must minimize impacts to Forest resources. Identifying potential adverse impacts (and opportunities to minimize or mitigate those impacts) is handled through the NEPA process, and a school of thought exists which argues that an ANILCA determination of adequate access should be made concurrently with the NEPA decision. However, completion of an ANILCA determination is necessary prior to the NEPA analysis in order to define the range of alternatives that will be analyzed, or else the agency runs the risk of evaluating alternatives that may not meet ANILCA's legal mandate for adequate access.

Determining adequate access under ANILCA need not be focused on precise route location and construction methodology. Rather, such details can be resolved through the NEPA process _after_ the ANILCA determination sets the stage for NEPA by defining the basic characteristics of adequate access. These "characteristics of adequacy" should be determined before developing the NEPA range of alternatives. Once determined, the NEPA process can then proceed with finding an alternative that meets each of these characteristics in a manner that minimizes impacts through proper route location and construction/design features. Such an approach is supported by agency regulations:

> *[The authorizing officer, prior to issuing any access authorization, must also ensure that] the*
> *route is so located and constructed as to minimize adverse impacts on soils, fish and wildlife,*
> *scenic, cultural, threatened and endangered species, and other values of the Federal land*
> [underlining added in this report for emphasis]
> [36 CFR 251.114(f)(2)]

Based on the reasoning explained above, the WRNF will finalize its ANILCA determination of adequate access prior to rendering a decision regarding the proposed action through the NEPA process. The ANILCA determination will be used to guide the range of alternatives developed and analyzed within the NEPA process.

III.    **Reasonable Use of Private Property – Methodology of Analysis**

According to the ANILCA statute and CFR, access to a private inholding is adequate if it secures the owner reasonable use of their property. This means the authorizing officer must consider whether the proposed use of the private inholding is reasonable. Statute and CFR do not define "reasonable use", but provide the following guidance:

> *…The authorizing officer shall determine what constitutes reasonable use and enjoyment of the*
> *lands based on contemporaneous uses made of similarly situated lands in the area and any other*
> *relevant criteria.*
> [underlining added in this report for emphasis]
> [36 CFR 251.114(a)]

White River National Forest                                                                                   Page 2

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

Thus, the authorizing officer must make his/her own determination as to what constitutes reasonable use. To make such a determination, the CFR's guidance is to consider "similarly situated" lands and "any other relevant criteria". However, in addition to not defining "reasonable use", statute and rule also do not define "similarly situated". The only guidance provided is to consider "contemporaneous uses" of lands "in the area". This leaves room for discretion on the part of the authorizing officer, and a review of case law demonstrates that the courts have acknowledged the appropriateness of such discretion. In a previous case involving ANILCA access, the 10th Circuit Court of Appeals stated:

> *The regulation on which [this case] relies does not define what constitutes "similarly situated" property, and it thus vests the Forest Service with considerable discretion in determining the particular properties that should be taken into account in deciding whether to issue special use permits.*
> [High Country Citizens Alliance v. United States Forest Service (10th Cir. 2000) No. 97-1373 (202 F.3d 835)]

III.a. Similarly Situated Lands - Methodology
For the Berlaimont Estates project, a series of characteristics were chosen for use in comparing the Berlaimont property with other properties within the general area. A comprehensive search for other properties was conducted utilizing geographic information systems (GIS) as well as specific suggestions received during the external scoping process from members of the public or other agencies/organizations. The GIS search started within the general local vicinity of the Berlaimont property, then expanded outward throughout the rest of the Eagle-Holy Cross Ranger District, and eventually into neighboring ranger districts on the WRNF and adjacent national forests. All-in-all, 23 properties were analyzed against the following characteristics:

- Year-round snowplowed access
- Property use
- True inholding surrounded by NFS lands
- Proximity to NFS lands
- Parcel size
- < 3 miles to public road
- Access route crosses NFS lands
- Private property contains multiple residential units
- Residential units are collectively served by one access route
- Property contains terrain/geography that restricts development or internal traffic circulation
- Property is not:
  - within a Wilderness Area
  - within a Roadless Area
  - within habitat for threatened, endangered, or sensitive (TES) species
- Property has year-round wheeled vehicle access
- Parcels are > 35 acres

Addendum B (Table for Analysis of Similarly Situated Lands) displays the results of this analysis in matrix form. Addendum C displays maps of the various properties considered. When considered together, this tabular data and geographic imagery provide the authorized officer with a comprehensive overview of the types of property uses that currently exist in the area of Berlaimont, and it facilitates a well thought

18-CV-887-29469

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

out comparison between the proposed use of the Berlaimont Estates property and the actual configuration and use of the other properties.

III.b. Other Relevant Criteria - Methodology
In addition to reviewing similarly situated properties, the Code of Federal Regulations states that the authorizing officer may also take into account other factors which could be relevant to determining whether the proposed use of a private inholding is reasonable. In the case of Berlaimont, other relevant criteria identified include:

- Berlaimont's close proximity to the Interstate 70 highway corridor
- Berlaimont's location within the resort area of the upper Vail Valley
- The applicant's site plan/homesite locations
- The applicant's plan for water supply infrastructure
- Colorado state law regarding subdivisions
- Eagle County zoning classification
- Eagle County Variance from Improvement Standards (VIS)

The findings for each of these considerations are described in Section IV, below.

IV.    **Reasonable Use of Private Property – Results of Analysis / Findings**

IV.a. Similarly Situated Lands - Findings
Using the characteristics listed in Section III.a above, 23 properties were evaluated to see if they could reasonably be described as similar to Berlaimont. The values assigned to each characteristic for each property are presented in Addendum B.

A close review of Addendum B reveals that several of the existing properties have some characteristics in common with what is proposed for Berlaimont. For example, some properties contain multiple residential parcels, or they rely on a single shared access route, or their access route is snowplowed in the winter to allow for year-round use by wheeled vehicles.

Far more importantly, however, none of the properties possess enough of the same characteristics as Berlaimont that they can be reasonably described as "similar" to Berlaimont. Particularly noteworthy was the absence of any properties that were true NFS inholdings (i.e. entirely surrounded by NFS land) with a subdivision design where standard parcel size is at least 35 acres. Perhaps more than any of the others, these two characteristics together (true NFS inholding; parcels sized at 35 acres) capture the uniqueness of Berlaimont, as viewed from a National Forest perspective.

IV.b. Other Relevant Criteria – Findings
Because none of the properties evaluated above were found to be similarly situated to Berlaimont, an evaluation of other relevant criteria becomes all the more important in determining if the proposed use of Berlaimont is reasonable.

- *Berlaimont's close proximity to the Interstate 70 highway corridor*
  Regular human presence and use of the NFS lands on either side of the heavily-traveled Interstate 70 corridor through central Colorado has been the norm for many decades. Adding the proposed

White River National Forest                                                                    Page 4

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

19 homesites to the area will not create a noteworthy increase in the amount of human activity on and around these highway-adjacent public lands.

- *Berlaimont's location within the resort area of the upper Vail Valley*
  As envisioned by the applicant, the Berlaimont development would consist of high-end luxury homes, and would be strictly residential in nature, with no commercial activities planned. Such residential developments are ~~very~~ common in the upper Vail Valley near the popular resorts of Vail and Beaver Creek, and in that regard Berlaimont does not mark a dramatic departure from other existing Vail Valley luxury developments such as Mountain Star, Cordillera, and Red Sky Ranch. Although ski tourism remains a major driver of the local economy, the Valley's communities of Vail, Minturn, Avon, Edwards, and Wolcott are home to a substantial population of year-round residents, including those residing in the aforementioned ~~luxury~~ developments.

- *The applicant's site plan/homesite locations*
  The final plat of the Berlaimont property (approved and recorded in 2011) subdivided the property into nineteen 35-acre parcels. Such density (one dwelling unit per 35 acres) is markedly lower than other existing developments nearby which border the National Forest, and therefore may result in fewer comparative impacts to adjacent NFS lands.

  ~~Additionally, site design graphics show that the applicant's plan is to build on those portions of the Berlaimont property that are relatively flat. Such homesite selection serves to reduce the potential for soil instability and surface water degradation, as well as limiting visual impacts to the surrounding community that could otherwise occur with ridgetop or cliffside construction.~~

- *The applicant's plan for water supply infrastructure*
  The applicant has stated that all water supply needs for the proposed development of Berlaimont will be fulfilled with their existing water rights, and the Water Court decree shows that all water supply infrastructure (ponds, ditches, springs) is located on their private lands, thereby avoiding the need to construct water infrastructure on surrounding NFS lands_ ~~(and impose additional impacts therein)~~.

When taking into consideration the positions of the State of Colorado and Eagle County regarding developments with 35-acre parcels generally, or Berlaimont's proposal specifically, it is important to ~~take a moment and~~ consider the degree to which such state and local positions have any bearing on the USFS authorizing officer's determination of reasonable use of private property.

The Forest Service authorizing officer's determination of what constitutes reasonable use is under no obligation to maintain consistency with (or show deference to) state or local positions regarding the proposed development. As a matter of fact, recently, in Rocky Mountain Wild v. Dallas [2017, Civil Action No. 15-cv-01342-RPM], the U.S. District Court for the District of Colorado stated:

*The Forest Service is specially charged with unique duties to consider the public interest specifically with regard to private activities affecting National Forest System lands. [The local government] has its own interests with regard to permitting or regulating development. It cannot be assumed that those interests coincide.*

**Commented [MAW-2]:** Not entirely sure how this fits the section or rationale. Are we saying that because of this fact, Berlaimont's plan is similar to other developments? Dissimilar? Either way, there also seems to be a value judgement here, and that probably belongs in the NEPA...?

18-CV-887-29471

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

In accordance with this direction, the authorizing officer will not subordinate his independent judgment of what constitutes reasonable use of the Berlaimont property. However, when considering the proposed use, it can be ~~illuminating~~ helpful to review any state and local laws, regulations, and decisions that pertain to the development of the property, and use those pieces of information as additional data points to further validate an independent determination of reasonableness.

- *Colorado state law regarding subdivisions*
  At the state government level, in 1972, the Colorado legislature passed Senate Bill 35 (codified as Colorado Revised Statute 30-28-101), requiring County governments throughout the state to create subdivision regulations guiding the subdivision of land. Normally, the subdivision review process involves a local government evaluating maps and site design plans to ensure appropriate traffic, water/sewer, and other infrastructure will be included in the development. However, the SB 35 included an exemption from subdivision regulations for any subdivided land that resulted in parcels of 35 acres or more.

  Berlaimont's platting of their 680-acre property into nineteen 35-acre homesite parcels means that, under state law, they are exempt from Eagle County's subdivision regulations. In general, it can be concluded that the State of Colorado considers the subdivision of rural property into 35-acre residential parcels, as proposed and platted by Berlaimont, to be an acceptable and lawful pattern of land use.

- *Eagle County zoning classification*
  With regards to local zoning, the Berlaimont property is zoned as "Resource". According to Eagle County LUR's, the purpose of the Resource zone district is

  > *"to maintain the open rural character of Eagle County and to protect and enhance the appropriate use of natural resources and agricultural uses in the County including water, minerals, fiber and open land. This is accomplished by limiting residential development to very low density single-family uses on lots of thirty-five (35) acres or larger,..."*
  > [Eagle County Land Use Regulations, Article 3, Section 3-210]

  Section 3-300 of the County's LUR's states that single-family dwelling units and accessory dwelling units on parcels of 35 acres or larger within the Resources zoning district are a "use by right", meaning that the use is entirely consistent with the purpose of the zoning district and is allowed without the need for further review and approval by the County's Planning Commission or Board of County Commissioners.

- *Eagle County Variance from Improvement Standards (VIS)*
  Although developments with 35-acre parcels are exempt from Eagle County's subdivision regulations, the County's LUR's explain that such developments must still comply with County regulations *"...regarding access, wildfire hazard mitigation, visual impact mitigation, building and fire code compliance and other off-site impact mitigation as determined necessary by the Board of County Commissioners for the protection of the environment and the health, safety and welfare of the residents and visitors of Eagle County."* [Eagle County Land Use Regulations, Article 5, Section 5-280.B.2.a]

18-CV-887-29472

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

It was in this context that Berlaimont had to seek a variance from the County's Roadway Standards for their proposed access road. Section 4-620.J.9.c(4) of the LUR's states that driveways cannot serve more than three units. Access routes serving more than three units must meet the County's Roadway Standards. Therefore, Berlaimont's proposed road required a variance related to [a] the requirement for dual access from the development to the public roadway system, [b] the frequency (interval spacing length) of emergency vehicle turnaround areas, and [c] road design standards for horizontal curve (switchback) geometry. Through the County's public hearing process, the Eagle County Board of County Commissioners granted the variance to Berlaimont in January 2014. Implicit in the granting of this variance is an acknowledgement by the County that the applicant's proposed development of their property is lawful.

NOTE: Even though the County has already approved variances for road design for the applicant's preferred route, the Forest Service is not bound by the County's approval when making an independent determination of reasonable use of private property, adequate access, or specific route selection. This independence also extends to the decision-making process during the NEPA evaluation.

In the NEPA evaluation, the analysis of each alternative will assume the minimal road design standards as outlined by the County, and such analysis will proceed with the assumption that the County would grant the variances in road design described above for any of the other possible routes under consideration as alternatives.

IV.c – Determination of Reasonable Use
The authorizing officer must determine whether the applicant's proposed use of their private property is reasonable, yet – per agency directives – stop short of actually regulating or controlling private property use.

*Except as authorized by law, order, or regulation, Forest Service policies, practices, and procedures shall not regulating private property use.* [FSM 5403.3]

*Avoid regulation of private lands when considering and authorizing access to those private lands.* [FSM 2730.3]

It is with this delicate balance in mind that the following determination is made.

The applicant is proposing to use their 680-acre private inholding to develop a residential community consisting of 19 homesites (with nine accessory dwelling units), each on a 35-acre parcel. Although no properties were identified that possess enough of the same characteristics as Berlaimont that they should be deemed "similarly situated" (Section IV.a), the "other relevant criteria" examined above (Section IV.b) show that the proposed use [a] is not a major departure from existing human activities within the upper Vail Valley and I-70 corridor, [b] does not appear to be unusual in its proposed density of development or location of homesites and water supply infrastructure, and [c] is not unlawful under consistent with Colorado statute or and Eagle County zoning regulations. Thus, based on these findings in Sections IV.a and IV.b, the applicant's proposed development is a reasonable use of their private property.

> **Commented [MAW-3]:** 'not unlawful' or 'consistent with" ??

18-CV-887-29473

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

V.     **Adequate Access - Determining What is Appropriate for the Berlaimont property**

Per 36 CFR 251.114(f)(2), adverse impacts on Forest resources may be minimized by identifying the optimal choices for route location and construction. As explained in Section II above, the effort to minimize adverse impacts is a task most appropriately suited for the NEPA analysis. However, unlike the NEPA analysis, a determination of adequate access under ANILCA does not need to identify a specific route location (alignment) or construction methodology. Adequacy of access can be achieved through a wide diversity of locations, construction techniques, and design features.

Instead, for ANILCA compliance, determining adequate access for the reasonable use of private property should focus on various factors that collectively may be termed as "characteristics of adequacy". These characteristics include:

- The specific area of the private property that must be reached by the access route (i.e. Where must the access route connect to the private property?)

  *Access that connects to Berlaimont's planned internal road network is necessary*
  Why? The WRNF has determined that the applicant's proposed development of the property is a reasonable use. Inherent in this determination is the conclusion that the applicant's platting of the 19 parcels – including the planned internal road network – is reasonable as well. Consequently, an access route across NFS land that does not connect to Berlaimont's internal road network would be nonfunctional and insufficient, and therefore inadequate.

- Seasonality of use (i.e. Does the reasonable use of the private property require year-round access? Must that access route accommodate use of highway-legal wheeled-vehicles? Must the route be snowplowed throughout the winter?)

  *Year-round access is necessary*
  Why? The applicant stated in their SF-299 application that the proposed use is of a year-round nature and will require year-round access. The WRNF has determined that the applicant's proposed use of the property is a reasonable use, thus making year-round access necessary.

  *Year-round access for highway-legal, wheeled-vehicles is necessary*
  Why? Because it would be unrealistic for the WRNF to conclude that the use which has been determined to be reasonable (19 homesites on 35-acre parcels) can be supported through over-the-snow vehicle (OSV) access only.

  ~~[A note of caution: To compare the access needs of Berlaimont Estates to those of the Fulford community is a flawed comparison. Fulford's development pattern consists of much smaller dwelling units on much smaller parcels with minimal connections to modern-day infrastructure. It is prudent to bear in mind that Fulford is a unique community—so much so that it has its own zoning district within Eagle County's Land Use Regulations (FH—Fulford Historic).]~~

  *Comment: [MAW-4]: Is this an internal note? If so, remove.*

  *Snow-plowing in winter is necessary*
  Why? Because if year-round access for highway-legal wheeled vehicles is necessary, then typical winter conditions in the Edwards area dictate that snow-plowing is necessary, lest wheeled-vehicle use be rendered impossible for several month each year.

18-CV-887-29474

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

*NOTE  The recommendations above do not advocate for a specific road alignment/route. A close reading of CFR 36 CFR 251.114(f)(2) (Addendum A) shows that route location and construction/design are the means of minimizing adverse impacts. And since analyzing potential impacts and minimization/mitigation measures is the purpose of the NEPA analysis, it stands to reason that the NEPA analysis is the appropriate forum for selecting the specific route alignment and design specifications. The ANILCA characteristics of adequacy detailed above can be applied to a wide variety of route alignments and construction techniques.*

**VI.    Conclusion**

To summarize, it is helpful briefly review the preceding sections.

**Section III** explains the methodology of analysis for determining if the proposed use of the private property is reasonable. As called for in agency regulations, a review of contemporaneous uses of similarly situated lands in the area was conducted, followed by a review of other relevant criteria. Twenty-three existing properties in the area were examined and compared to the proposed Berlaimont development using fifteen characteristics. Additionally, seven other criteria were considered as part of the analysis. They ranged from the proposed development's proximity to the Interstate 70 highway corridor to the development's legal standing under state and local law.

**Section IV** detailed the results of the analysis outlined in Section III. The similarly situated analysis (Section IV.a) showed that the proposed Berlaimont development was unique in the combination of a couple of key characteristics such as its configuration as a true NFS inholding with parcels as large as 35 acres each. Thus it can be reasonably asserted that there are no similarly situated properties in the area to serve as a benchmark or point of comparison for the Berlaimont proposal.

The analysis of other relevant criteria (Section IV.b) demonstrated that the Berlaimont proposal possesses certain characteristics that – while not conducive for comparison with other properties – nonetheless are meaningful in speaking to the proposal's reasonableness. For example, the proposal occurs within close proximity to the Interstate 70 corridor, where heavy human habitation is already present. Section IV.c explains how the analyses of similarly situated properties and other relevant criteria, when viewed together, demonstrate that the proposed use of the Berlaimont property is reasonable.

Once a determination is made that the proposed use of the Berlaimont property is reasonable, **Section V** discusses what would constitute "adequate access" to secure that reasonable use of the property, as required under Federal statute. This section defines the basic characteristics of adequacy, thereby leaving the specific route alignment and construction methodology to be determined by the NEPA analysis. Characteristics of adequacy include an access route that connects to the property's internal road network, and year-round access by highway-legal wheeled vehicles, supported by snowplowing. This is the nature of access that the WRNF must provide in order to comply with the Federal ANILCA statute and associated agency regulations.

White River National Forest

18-CV-887-29475

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

**Addendum A**
**Relevant Statute and Administrative Regulations**

**Statutory language** [note the absence of any language addressing minimization of impacts]

94 STAT. 2488 PUBLIC LAW 96-487 - DEC. 2, 1980
*ACCESS*
SEC. 1323. (a) Notwithstanding any other provision of law, and subject to such terms and conditions as
the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned
land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the
owner the reasonable use and enjoyment thereof: *Provided,* That such owner comply with rules and
regulations applicable to ingress and egress to or from the National Forest System.

**CFR language (agency regulations)**

36 CFR 251 Subpart D—Access to Non-Federal Lands

§ 251.110 Scope and application.
    (a) The regulations in this subpart set forth the procedures by which landowners may apply for
access across National Forest System lands and the terms and conditions that govern any special
use or other authorization that is issued by the Forest Service to permit such access.

    (b) These regulations apply to access across all National Forest System lands, including
Congressionally designated areas, and supplement the regulations in subpart B of this part, and in
parts 212 and 293 of this chapter. The regulations of this subpart do not affect rights-of-way
established under authority of R.S. 2477 (43 U.S.C. 932); rights-of-way transferred to States
under 23 U.S.C. 317; access rights outstanding in third parties at the time the United States
acquired the land; or the rights reserved in conveyances to the United States and in other
easements granted by an authorized officer of the Forest Service. Except for the aforementioned
rights-of-way, currently valid special-use authorizations will become subject to the rules of this
subpart upon expiration, termination, reversion, modification, or reauthorization.

    (c) Subject to the terms and conditions contained in this part and in parts 212 and 293 of this
chapter, as appropriate, landowners shall be authorized such access as the authorized officer
deems to be adequate to secure them the reasonable use and enjoyment of their land.

    (d) In those cases where a landowner's ingress or egress across National Forest System lands
would require surface disturbance or would require the use of Government-owned roads, trails, or
transportation facilities not authorized for general public use, the landowner must apply for and
receive a special-use or road-use authorization documenting the occupancy and use authorized on
National Forest System lands or facilities and identifying the landowner's rights, privileges,
responsibilities, and obligations.

18-CV-887-29476

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

(e) Where ingress and egress will require the use of existing Government-owned roads, trails, or other transportation facilities which are open and available for general public use, use by the landowner shall be in accordance with the provisions of part 212 of this chapter.

(f) The rules of this subpart do not apply to access within conservation system units in Alaska which are subject to title XI of the Alaska National Interest Lands Conservation Act (16 U.S.C. 3101), except for access to inholdings authorized by section 1110(b) of that Act.

(g) Where there is existing access or a right of access to a property over non-National Forest land or over public roads that is adequate or that can be made adequate, there is no obligation to grant additional access through National Forest System lands.

§ 251.111 Definitions.
In addition to the definitions in subpart B of this part, the following terms apply to this subpart:
   Access means the ability of landowners to have ingress and egress to their lands. It does not include rights-of-way for power lines or other utilities.

   Adequate access means a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with similarly situated non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources.

   Congressionally designated area means lands which are within the boundaries of a component of the National Wilderness Preservation System, National Wild and Scenic River System, National Trails System, and also National Monuments, Recreation, and Scenic Areas within the National Forest System, and similar areas designated by Federal statute.

   Landowner(s) means the owner(s) of non-Federal land or interests in land within the boundaries of the National Forest System.

§ 251.112 Application requirements.
   (a) A landowner shall apply for access across National Forest System lands in accordance with the application requirements of § 251.54 of this part. Such application shall specifically include a statement of the intended mode of access to, and uses of, the non-Federal land for which the special-use authorization is requested.

   (b) The application shall disclose the historic access to the landowner's property and any rights of access which may exist over non-federally owned land and shall provide reasons why these means of access do not provide adequate access to the landowners property.

   (c) The information required to apply for access across National Forest lands under this subpart is approved for use under subpart B of this part and assigned OMB control number 0596-0082.

§ 251.113 Instrument of authorization.
   To grant authority to construct and/or use facilities and structures on National Forest System lands for access to non-Federal lands, the authorized officer shall issue a special-use authorization in conformance with the provisions of subpart B of this part or a road-use permit. In cases where

White River National Forest                                                     Page 11

**LETTER TO PROJECT FILE**
**Determination of Minimum Requirements for Access to Berlaimont Estates**
**in accordance with ANILCA**

Road Rights-of-way Construction And Use Agreements are in effect, the authorized officer may grant an easement in accordance with the provisions of part 212 of this chapter.

§ 251.114 Criteria, terms and conditions.

(a) In issuing a special-use authorization for access to non-Federal lands, the authorized officer shall authorize only those access facilities or modes of access that are needed for the reasonable use and enjoyment of the land and that minimize the impacts on the Federal resources. The authorizing officer shall determine what constitutes reasonable use and enjoyment of the lands based on contemporaneous uses made of similarly situated lands in the area and any other relevant criteria.

(b) Landowners must pay an appropriate fee for the authorized use of National Forest System lands in accordance with § 251.57 of this part.

(c) A landowner may be required to provide a reciprocal grant of access to the United States across the landowner's property where such reciprocal right is deemed by the authorized officer to be necessary for the management of adjacent Federal land. In such case, the landowner shall receive the fair market value of the rights-of-way granted to the United States. If the value of the rights-of-way obtained by the Government exceeds the value of the rights-of-way granted, the difference in value will be paid to the landowner. If the value of the rights-of-way across Government land exceeds the value of the rights-of-way across the private land, an appropriate adjustment will be made in the fee charged for the special-use authorization as provided in § 251.57(b)(5) of this part.

(d) For access across National Forest System lands that will have significant non-Forest user traffic, a landowner may be required to construct new roads or reconstruct existing roads to bring the roads to a safe and adequate standard. A landowner also may be required to provide for the operation and maintenance of the road. This may be done by arranging for such road to be made part of the local public road system, or formation of a local improvement district to assume the responsibilities for the operation and maintenance of the road as either a private road or as a public road, as determined to be appropriate by the authorizing officer.

(e) When access is tributary to or dependent on forest development roads, and traffic over these roads arising from the use of landowner's lands exceeds their safe capacity or will cause damage to the roadway, the landowner(s) may be required to obtain a road-use permit and to perform such reconstruction as necessary to bring the road to a safe and adequate standard to accommodate such traffic in addition to the Government's traffic. In such case, the landowner(s) also shall enter into a cooperative maintenance arrangement with the Forest Service to ensure that the landowner's commensurate maintenance responsibilities are met or shall make arrangements to have the jurisdiction and maintenance responsibility for the road assumed by the appropriate public road authority.

(f) In addition to ensuring that applicable terms and conditions of paragraphs (a) through (e) of this section are met, the authorizing officer, prior to issuing any access authorization, must also ensure that:

(1) The landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law;

White River National Forest                                    Page 12

### LETTER TO PROJECT FILE
**Determination of Minimum Requirements for Access to Berlaimont Estates
in accordance with ANILCA**

(2) The route is so located and constructed as to minimize adverse impacts on soils, fish and wildlife, scenic, cultural, threatened and endangered species, and other values of the Federal land;

(3) The location and method of access is as consistent as reasonably possible with the management of any congressionally designated area and is consistent with Forest Land and Resource Management Plans or the plans are amended to accommodate the access grant, and;

(4) When access routes exist across the adjacent non-Federal lands or the best route as determined by the authorizing officer is across non-Federal lands, the applicant landowner has demonstrated that all legal recourse to obtain reasonable access across adjacent non-Federal lands has been exhausted or has little chance of success.

(g) In addition to the other requirements of this section, the following factors shall be considered in authorizing access to non-federally owned lands over National Forest System lands which are components of the National Wilderness Preservation System:

(1) The use of means of ingress and egress which have been or are being customarily used with respect to similarly situated non-Federal land used for similar purposes;

(2) The combination of routes and modes of travel, including nonmotorized modes, which will cause the least lasting impact on the wilderness but, at the same time, will permit the reasonable use of the non-federally owned land;

(3) The examination of a voluntary acquisition of land or interests in land by exchange, purchase, or donation to modify or eliminate the need to use wilderness areas for access purposes.

White River National Forest

18-CV-887-29479