## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILDERNESS WORKSHOP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERYL HARRELL, *et al.*, | ) | No. 1:23-cv-00678-JMC |
| | ) | |
| Defendants, | ) | |
| | ) | |
| BERLAIMONT ESTATES, LLC, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

---

## BERLAIMONT ESTATES, LLC'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................... 2

   I.   Berlaimont owns land within the boundaries of the National Forest System. ..................... 3

   II.  Berlaimont applied for a Forest Service special use authorization to construct an access route. ........................................................................................................................... 5

   III. The Forest Service conducted an exhaustive analysis of alternative access routes and environmental impacts. ............................................................................................... 5

   IV. The Forest Service's Final Record of Decision authorizes Berlaimont to construct an access route to the developable portion of the Property. ..................................................... 6

   V.  Procedural History ....................................................................................................... 7

LEGAL STANDARD .................................................................................................... 8

ARGUMENT .................................................................................................................. 8

   I.   The plain text of 16 U.S.C. § 3210(a) applies to the entirety of the "National Forest System," not just the two National Forests located in Alaska. ............................................ 8

   II.  No court has ever ruled that 16 U.S.C. § 3210(a) applies only to the two National Forests in Alaska. ............................................................................................................... 10

       A.   Since Congress enacted § 3210(a), courts have uniformly ruled it applies to the "National Forest System." ................................................................................ 10

       B.   An unrelated case interpreting a different provision of ANILCA supports the Forest Service's interpretation of § 3210(a) and refutes the Plaintiffs' interpretation. ...... 12

   III. Reading the term "in Alaska" into § 3210(a) would materially alter the meaning of the plain text of the statute. ..................................................................................... 14

   IV. The legislative history of § 3210(a) indicates that Congress intended that statute to apply to all "National Forest System" lands. ....................................................................... 17

   V.  Section 3210(a) does not conflict with FLPMA. .................................................... 18

   VI. Even if § 3210(a) is ambiguous, the Forest Service's construction of that statute is a reasonable interpretation entitled to *Chevron* deference. ................................................. 20

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Amoco Production Co. v. Village of Gambell, AK*,
  480 U.S. 531 (1987) ............................................................................... 12, 13, 14, 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 8, 9

*Bostock v. Clayton Cnty., Georgia*,
  140 S. Ct. 1731 (2020) ...................................................................................... 9, 14

*Calloway v. Harvey*,
  590 F. Supp. 2d 29 (D.D.C. 2008) ......................................................................... 3

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
  467 U.S. 837 (1984) ....................................................................................... 20, 21

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993) .............................................................................................. 19

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ................................................................................... 17, 20

*Great N. R. Co. v. United States*,
  315 U.S. 262 (1942) ............................................................................................ 10

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  920 F.3d 1 (D.C. Cir. 2019) ................................................................................ 22

*Henok v. Chase Home Fin., LLC*,
  947 F. Supp. 2d 6 (D.D.C. 2013) ........................................................................... 8

*Henson v. Santander Consumer USA Inc.*,
  137 S. Ct. 1718 (2017) ........................................................................................ 15

*Hill Dermaceuticals, Inc. v. FDA*,
  709 F.3d 44 (D.C. Cir. 2013) ................................................................................. 3

*Honeycutt v. United States*,
  581 U.S. 443 (2017) ............................................................................................ 14

*Liberty Maritime Corp. v. United States*,
  928 F.2d 413 (D.C. Cir. 1991) ............................................................................. 19

*Lissack v. Comm'r of Internal Revenue*,
  68 F.4th 1312 (D.C. Cir. 2023) ............................................................................ 21

*Loper Bright Enterprises, Inc. v. Raimondo*,
   45 F.4th 359 (D.C. Cir. 2022).............................................................................. 21

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   571 U.S. 161 (2014)........................................................................................... 10

*Mont. Wilderness Ass'n v. U.S. Forest Serv.*,
   655 F.2d 951 (9th Cir. 1981) .............................................................................. 11

*Nasdaq Stock Mkt. LLC v. SEC*,
   38 F.4th 1126 (D.C. Cir. 2022)........................................................................... 21

*Nat'l Parks Conservation Ass'n v. United States*,
   177 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................... 11

*Puerto Rico v. Franklin Calif. Tax-Free Tr.*,
   579 U.S. 115 (2016)............................................................................................. 8

\*Rocky Mountain Wild v. Dallas,
   No. 19-CV-01512-CMA, 2020 WL 1529181 (D. Colo. Mar. 31, 2020).......... 11, 12

\*United States v. Jenks,
   22 F.3d 1513 (10th Cir. 1994) ................................................................ 11, 12, 20

*United States v. Srnsky*,
   271 F.3d 595 (4th Cir. 2001) .............................................................................. 12

*Utah v. Andrus*,
   486 F. Supp. 996 (D. Utah 1979)........................................................................ 18

*Util. Air Reg. Grp. v. EPA*,
   573 U.S. 302 (2014)........................................................................................... 21

*Wolverine Power Co. v. FERC*,
   963 F.2d 446 (D.C. Cir. 1992)........................................................................... 10

*Ysleta Del Sur Pueblo v. Texas*,
   142 S. Ct. 1929 (2022)....................................................................................... 14

**Statutes**

5 U.S.C. § 706........................................................................................................ 3

16 U.S.C. § 410hh-2 ............................................................................................. 16

16 U.S.C. § 539(b) ................................................................................................ 16

16 U.S.C. § 539b(a) .............................................................................................. 15

16 U.S.C. § 539c(a) .................................................................................................. 16

16 U.S.C. § 539d(c) .................................................................................................. 15

*16 U.S.C. § 1609(a) ..................................................................................... 12, 13, 20

16 U.S.C. § 3102(3) .................................................................................................. 13

16 U.S.C. § 3126 ...................................................................................................... 16

*16 U.S.C. § 3210(a) .......................................................................................... passim

16 U.S.C. § 3215 ...................................................................................................... 16

43 U.S.C. § 1603(b) ................................................................................................. 16

43 U.S.C. § 1761(a) ................................................................................................. 20

Colo. Rev. Stat. § 30-28-101(10)(b) ......................................................................... 3

Colo. Rev. Stat. § 30-28-101(c)(1) ........................................................................... 3

Pub. L. 93-378 (Aug. 17, 1974) ............................................................................... 9

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 8

**Regulations**

36 C.F.R. § 200.1(c)(2) ............................................................................................ 9

36 C.F.R. § 200.2 ................................................................................................. 3, 16

36 C.F.R. § 251.110(b) ............................................................................................ 22

36 C.F.R. § 251.111 ................................................................................................ 22

**Other Authorities**

*56 Fed. Reg. 27,410 (June 14, 1991) ..................................................................... 22

S. Rep. 96-413, 1980 U.S.C.C.A.N. 5070 ............................................... 17, 18, 19, 20

Intervenor-Defendant Berlaimont Estates, LLC ("Berlaimont") files this Cross-Motion for partial summary judgment and response in opposition to Plaintiffs' Partial Motion for Summary Judgment (ECF No. 29 ("Mtn.")) regarding the geographic applicability of section 1323(a) of the Alaska National Interest Lands Conservation Act, Pub. L. 96-487 ("ANILCA"), 16 U.S.C. § 3210(a) ("§ 3210(a)").  *See also* ECF No. 25 at 2; Minute Order (June 23, 2023).

## INTRODUCTION

16 U.S.C. § 3210(a), titled, "Access by owner to nonfederally owned land," provides:

**(a) Reasonable use and enjoyment of land within boundaries of National Forest System**

Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: *Provided*, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

The geographic applicability of § 3210(a) is not an open question.  In approximately 19 judicial decisions spanning four decades, federal appellate and district courts around the country have, without exception, ruled that the plain text of § 3210(a) means what it says: that provision applies to all "nonfederally owned land within the boundaries of *the National Forest System*," not just within the two units of the National Forest System in Alaska.  The plain language of the statute and definition of "National Forest System" are crystal clear.  *No court has ever* ruled that § 3210(a) applies only to National Forest System lands in Alaska.

Plaintiffs attempt to manufacture a dispute about the geographic applicability of § 3210(a) in order to replace the plain language of the statute with their preferred language.  *See* Mtn. at 22 (claiming that "confusion [about § 3210(a)'s geographic applicability] swirled during the administrative proceeding"); *id.* at 40 (suggesting that an "ANILCA controversy" existed).

1

But there is no "confusion" and there is no "controversy." Since 1981—the year after Congress stated that § 3210(a) applies to the "National Forest System"—federal courts around the country have uniformly ruled that § 3210(a) applies to *all* National Forest System lands.

To rule that § 3210(a) applies only to the two units of the National Forest System *in Alaska*, as Plaintiffs prefer, the Court would be required to reject the plain text of the statute and reject at least 19 judicial decisions from federal appellate and district courts construing that plain text. The Court should reject Plaintiffs' attempt to create a dispute where none exists, and instead give effect to the plain language of § 3210(a), and rule that that provision applies to "National Forest System" lands, as the statute says.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The sole issue presented to the Court in this partial summary judgment briefing is a discrete issue of statutory interpretation: whether 16 U.S.C. § 3210(a) applies to the "National Forest System," as the statute says, or only the two units of the National Forest System located in Alaska, as Plaintiffs assert. This issue is the basis for Plaintiffs' Claim One, which is the only claim before the Court in this partial summary judgment briefing. *See* ECF No. 15-1 at ¶¶ 187-97 (First Amended Complaint). Plaintiffs assert nine other claims in their First Amended Complaint, but none of those nine claims are at issue at this stage.

Although the issue before the Court is a single question of statutory interpretation, Berlaimont provides the following brief factual background and procedural history "with references to the administrative record," as required by LCvR 7(h)(2).[1]

---

[1] Pursuant to LCvR 7(h)(2), Berlaimont does not respond to each paragraph of Plaintiffs' "Statement of Undisputed Facts," *see* ECF No. 29-12, many of which are inaccurate, disputed, assertions of law rather than fact, or not material to the legal issue of whether § 3210(a) applies to the entirety of the "National Forest System." Plaintiffs' Motion improperly attaches and relies upon materials that are not part of the administrative record in this matter, and the Court should decline to review or rely upon those extra-record materials. *See* ECF No. 29-12 at ¶¶ 23-24

I.    **Berlaimont owns land within the boundaries of the National Forest System.**

Berlaimont owns a 680-acre inholding (the "Property") within the White River National

Forest in Eagle County, Colorado.  The White River National Forest is a unit of the National

Forest System.  36 C.F.R. § 200.2.  The Property is "nonfederally owned land within the

boundaries of the National Forest System" because National Forest System lands surround the

Property on all sides.  FS-007118.  The topography in and around the Property is steep and

mountainous.  FS-007123-24.  The boundary line of the Berlaimont Property is located

approximately one mile from, and within sight of, Interstate 70 near Edwards, Colorado, a busy

interstate that serves as the only east-west interstate highway in Colorado.  FS-007152.  The area

contains multiple residential developments containing thousands of residential units.  FS-006431.

Berlaimont plans an ultra-low-density development of 19 homes on the 680 acres, a use

by right guaranteed by Colorado law.  Colo. Rev. Stat. § 30-28-101(10)(b), (c)(1).  FS-007119.

The following graphic (at FS-007152) identifies the Property, the surrounding National Forest

System lands, and the access route that the Forest Service approved.

---

(acknowledging that materials attached to Plaintiffs' Motion "are not contained in the
Administrative Record").  It is fundamental that, in a case brought under the Administrative
Procedure Act's ("APA") judicial review provision, 5 U.S.C. § 706, "the Court's review is
limited to the administrative record" and does not include extra-record materials.  *Calloway v.
Harvey*, 590 F. Supp. 2d 29, 36 (D.D.C. 2008).  "[I]t is black-letter administrative law that in an
APA case, a reviewing court should have before it neither more nor less information than did the
agency when it made its decision."  *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir.
2013) (internal quotation marks omitted).  The Court should decline to review or rely upon
documents cited in Plaintiffs' Motion that are not in the administrative record.



The Property is U-shaped.  The base of the U is higher in elevation than the ends of the arms of the U.  The lower elevation, southern ends of the arms of the U run along steep, narrow ridges, and those areas are too steep for homes.  The developable, useable part of the Property is in the higher elevation, northern part of the arms of the U, and in the base of the U.  FS-006430-31.

Currently, an unpaved Forest Service road reaches an undevelopable portion at the tip of one of the arms of the U-shaped Property.  FS-003711, 007121.  That Forest Service road is not snowplowed during winter months, and is drivable only by off-road or four-wheel-drive vehicles during summer months.  There is no current year-round paved snowplowed access to the developable, useable part of the Property.  FS-007121.

## II.    Berlaimont applied for a Forest Service special use authorization to construct an access route.

In 2008, Berlaimont submitted a special use application to the Forest Service seeking to access its Property by constructing a road across National Forest System lands.  Since road design and engineering—such as turn radii, width, and surface materials—are subject to County approval, the Forest Service requested Berlaimont to seek approvals from Eagle County, Colorado first, and then resubmit Berlaimont's special use application to the Forest Service.  Berlaimont followed the Forest Service's direction.  FS-006434-35.  After obtaining County approvals, Berlaimont submitted an application (again) to the Forest Service seeking access over National Forest System lands so that Berlaimont could develop 19 homes on the Property.  FS-006435-43.

## III.    The Forest Service conducted an exhaustive analysis of alternative access routes and environmental impacts.

During the 15 years between Berlaimont's 2008 special use application and the Forest Service's 2023 Final Record of Decision, the Forest Service conducted an extensive National

5

Environmental Policy Act ("NEPA") analysis.  FS-006443-45; ECF No. 7 at 8-9.  In that

process, the Forest Service noted that, under the text of 16 U.S.C. § 3210(a) and caselaw

interpreting that statute, § 3210(a) governed Berlaimont's rights to access its inholding.  FS-

003424.  The Draft Environmental Impact Statement includes a twenty-page analysis, titled

"ANILCA Determination," summarizing the agency's conclusion that, as stated in the statute,

§ 3210(a) required the agency to provide Berlaimont access that is adequate to allow Berlaimont

to make reasonable use of its private property.  FS-003765-84.  The Draft Record of Decision

and Final Environmental Impact Statement also stated the agency's conclusion that § 3210(a)

applies to the National Forest System nationwide.  FS-004616, 004618-19, 004151-54, 004505-

22.

**IV.**  **The Forest Service's Final Record of Decision authorizes Berlaimont to construct an access route to the developable portion of the Property.**

The Forest Service's March 10, 2023 Final Record of Decision ("Decision") authorizes

Berlaimont to construct an access route across National Forest System lands to reach the

developable portion of the Property.  FS-007116-71.  As required by 16 U.S.C. § 3210(a), the

Forest Service considered existing properties that are potentially similarly situated to

Berlaimont's Property and, based on that analysis, determined that Berlaimont's planned 19-

home development is a "reasonable use" of the Property.  FS-007127-29.  The Forest Service

recognized that homes in Berlaimont's planned development will be used as primary residences

and, therefore, required paved, snowplowed, and year-round access by car.  FS-007127-29.

In the Decision, the Forest Service selected an access route designated as "Alternative 2-

modified."  FS-007121-22.  The Forest Service acknowledged its mandatory duty under 16

U.S.C. § 3210(a) to provide access that is "adequate" to provide Berlaimont the "reasonable use"

of its Property.  FS-007125.

6

V.    **Procedural History**

On April 18, 2023, Plaintiffs filed the First Amended Complaint in this matter, and

asserted nine claims based on ANILCA, NEPA, APA, Federal Records Act, and the Freedom of

Information Act.  ECF No. 15.  In Claim One, Plaintiffs assert that 16 U.S.C. § 3210(a) applies

to only National Forest System lands located "in Alaska" and does not apply to National Forest

System lands in Colorado (or any other state), despite the plain language of 16 U.S.C. § 3210(a),

which states that it applies "to nonfederally owned land within the boundaries of the National

Forest System."  ECF No. 15 at ¶¶ 187-97.

 On June 22, 2023, the parties filed a Joint Status Report and Proposed Schedule

proposing that the parties file partial summary judgment briefing regarding the geographic

applicability of § 3210(a), with the remaining claims and issues to be briefed following the

Court's resolution of that issue.  ECF No. 25 at 2.  On June 23, 2023, the Court issued a Minute

Order directing the parties to file partial summary judgment briefing on the geographic

applicability issue.

Plaintiffs' Claim One is the only claim before the Court in this partial summary judgment

briefing.  None of Plaintiffs' nine other claims are before the Court.  Despite the Court's order

providing that initial partial summary judgment briefing shall be limited to "the applicability of

ANILCA's access provision outside of Alaska," *see* ECF No. 25 at 2; Minute Order (June 23,

2023), Plaintiffs' Motion strays into collateral issues that have no bearing on that issue, including

the adequacy of the NEPA analysis, the Forest Service's authorization of utility access under the

Federal Land Policy and Management Act ("FLPMA"), wildlife, and the sufficiency of the

administrative record.  None of those claims and arguments have any merit.  Berlaimont does not

address those claims and arguments because they are not before the Court at this juncture.  ECF

No. 25 at 2; Minute Order (June 23, 2023).

**LEGAL STANDARD**

"Summary judgment is warranted on an individual claim or part of a claim if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Henok v. Chase Home Fin., LLC*, 947 F. Supp. 2d 6, 8 (D.D.C. 2013) (quoting Fed. R. Civ. P. 56(a)). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. Fed. R. Civ. P. 56(a). Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**ARGUMENT**

**I.    The plain text of 16 U.S.C. § 3210(a) applies to the entirety of the "National Forest System," not just the two National Forests located in Alaska.**

Plaintiffs ask the Court to employ a variety of tools of statutory construction, but ignore the most important one: the plain language of the statute. In fact, Plaintiffs avoid acknowledging the text of § 3210(a) until page 28 of their 43-page Motion. *See* ECF No. 29 at 28. Plaintiffs instead ask the Court to adopt their contention that § 3210(a) applies only "in Alaska" based on pre-enactment legislative history (Mtn. at 25-26), their account of the "structure" of ANILCA (13), Plaintiffs' opinions about the purpose of other statutes (FLPMA and the National Forest Management Act) (25-26), and Plaintiffs' editorializing about the interplay between "federal interests" and "state and local concerns" (35-36).

But where a "statute's language is plain," as is the language of § 3210(a), resolution of a disputed issue "begins with the language of the statute, and that is also where the inquiry should end." *Puerto Rico v. Franklin Calif. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quotation marks omitted). In the words of the Supreme Court:

This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.

*Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020).

Here, the Court need go no further than the statutory text to resolve this issue. Section 3210(a) provides in relevant part:

Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land *within the boundaries of the National Forest System* as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof[.]

16 U.S.C. § 3210(a) (emphasis added). The language is plain. The access mandate applies to nonfederal land "within the boundaries of the National Forest System." Nothing within the plain text limits its application to only land within the National Forest System located in Alaska.

Elsewhere in the same Title 16 of the U.S. Code, in a statute titled "National Forest System," Congress defined that term:

Congress declares that the National Forest System consists of units of federally owned forest, range, and related lands *throughout the United States* and its territories, united into a nationally significant system dedicated to the long-term benefit for present and future generations, and that it is the purpose of this section to include all such areas into one integral system. *The "National Forest System" shall include all national forest lands* reserved or withdrawn from the public domain of the United States, all national forest lands acquired through purchase, exchange, donation, or other means, . . . and other lands, waters, or interests therein which are administered by the Forest Service . . . .

16 U.S.C. § 1609(a) (emphasis added); *accord* 36 C.F.R. § 200.1(c)(2) ("The National Forest System includes . . . 155 [p]roclaimed or designated National Forests" around the country.). Congress enacted the statutory definition of "National Forest System" in 1974, *see* Pub. L. 93-378 (Aug. 17, 1974), and that provision was part of the U.S. Code when Congress enacted § 3210(a) in 1980.

Congress is presumed to know when it enacted 16 U.S.C. § 3210(a) that the "National

Forest System" is defined in 16 U.S.C. § 1609(a) to include units of federal land "throughout the

United States." *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014)

("[We] presume that Congress is aware of existing law when it passes legislation."); *Wolverine*

*Power Co. v. FERC*, 963 F.2d 446, 451 (D.C. Cir. 1992) (where statutory "language

unambiguously uses a statutorily defined term, that definition controls").

Plaintiffs claim that "the general rule of construction that any ambiguity in a grant is to be

resolved favorably to a sovereign grantor" somehow requires the Court to read "in Alaska" into

§ 3210(a). *See* Mtn. at 21 (quoting *Great N. R. Co. v. United States*, 315 U.S. 262, 272 (1942)).

But that principle is inapplicable here because no "ambiguity" exists. The inquiry into the

meaning of § 3210(a) "begins" and "end[s]" with its plain statutory text: "National Forest

System" means "National Forest System." *Franklin Calif. Tax-Free Tr.*, 579 U.S. at 125. And

reading the words "in Alaska" into the statute, as Plaintiffs do, does not "resolve" an ambiguity

in a land grant in favor of a "sovereign grantor"; it inserts extra-statutory words into a statutory

provision about the geographic scope of the statute.

## II.   No court has ever ruled that 16 U.S.C. § 3210(a) applies only to the two National Forests in Alaska.

### A.   Since Congress enacted § 3210(a), courts have uniformly ruled it applies to the "National Forest System."

Plaintiffs ask the Court to adopt an entirely new interpretation of § 3210(a)—one that no

court has ever adopted and that would be contrary to at least 19 judicial decisions. Since

immediately after Congress enacted § 3210(a) in 1980, courts have interpreted the plain language

of § 3210(a) to apply to the entirety of the "National Forest System" (like the statute says), not

just the Tongass National Forest and the Chugach National Forest (the only two National Forests

in Alaska), as Plaintiffs assert. *See, e.g., Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d

951, 957 (9th Cir. 1981), cert. denied, 455 U.S. 989 (1982) (noting that the "bare language" of

§ 3210(a) does not "limit the provision of access to Alaskan land" and citing 16 U.S.C.

§ 1609(a), in which Congress defined "National Forest System" to "include *all national forest*

*lands*" "throughout the United States"); *United States v. Jenks*, 22 F.3d 1513, 1516 n.3 (10th Cir.

1994) ("Section 3210(a) of ANILCA applies to all National Forest System lands, not just those

in Alaska."); *Nat'l Parks Conservation Ass'n v. United States*, 177 F. Supp. 3d 1, 16 n.6 (D.D.C.

2016) ("Although ANICLA, in general, applies to national forests in Alaska, courts have

determined that its 'reasonable use' provision has a 'nation-wide effect,' and is thus applicable to

national forests throughout the United States." (quoting *Mont. Wilderness*, 655 F.2d at 954)).[2]

　　　　Attached to this Cross-Motion is an Addendum list of 19 cases that ruled that § 3210(a)

applies nationwide.  *Every court* to consider the issue ruled that § 3210(a) applies nationwide,

not just in Alaska.  *See* Addendum.

　　　　The very same Plaintiffs, represented by the very same counsel, unsuccessfully asserted

this "only in Alaska" argument before.  In another case concerning access to privately owned

land surrounded by National Forest System lands in Colorado, Plaintiffs asked the Colorado

federal district court to adopt the same incorrect interpretation of § 3210(a) that they ask this

Court to adopt.  *See Rocky Mountain Wild v. Dallas*, No. 19-CV-01512-CMA, 2020 WL

1529181, at *2 (D. Colo. Mar. 31, 2020).  Plaintiffs advanced many of the same arguments they

advance here.  The court there, like every other court that addressed the issue, rejected the

Plaintiffs' argument and ruled that the plain text of § 3210(a) applies to National Forest System

---

[2] Plaintiffs assert that the Ninth Circuit's 1981 ruling in *Montana Wilderness* is "of questionable viability."  Mtn. at 29.  But Plaintiffs cite no support for that assertion.  The reality is that at least 19 judicial decisions followed the ruling in *Montana Wilderness* that § 3210(a) applies nationwide.  *See* Addendum.  None declined to follow *Montana Wilderness*.  No decision overruled or abrogated it.

lands nationwide. *Id.* ("[T]he terms of the ANILCA's access provision are not explicitly limited

to Alaska. Rather, the terms refer to 'land within the boundaries of the National Forest System,'

which extends across the nation."). Relying on caselaw, including *United States v. Jenks*, 22

F.3d 1513 (10th Cir. 1994), the court noted:

> Congress passed the access provision '[i]n order to resolve any lingering legal
> questions concerning inholders' right of access to their property. . . .' *Jenks*, 22
> F.3d at 1516 (citation omitted). Congress's intent to provide a uniform standard
> as to inholders' rights would undoubtedly be frustrated if the statute only applied
> to one state. Therefore, in congruence with the Tenth Circuit's reasoning in
> *Jenks*, the Court concludes that Section 3210(a) of the ANILCA is nationally
> applicable.

*Rocky Mountain Wild*, 2020 WL 1529181, at *2-3.

Plaintiffs cite *United States v. Srnsky*, 271 F.3d 595 (4th Cir. 2001) as supposed support

for their argument that § 3210(a) applies only in Alaska. But *Srnsky* did not decide that

§ 3210(a) applies only in Alaska, in a holding or in dictum. The court in *Srnsky* refused to

decide the issue. *See id.* at 603 ("we need not decide the geographic scope of ANILCA"). Nor

did *Srnsky* grapple with the plain language of § 3210(a) or acknowledge that Congress *did* define

"National Forest System" to mean national forest lands "throughout the United States and its

territories." 16 U.S.C. § 1609(a). Plaintiffs cite no other decision that even criticized the

interpretation, adopted by approximately 19 other judicial decisions, that § 3210(a) applies

nationwide, let alone a single decision that *ruled* that way.

> B.    An unrelated case interpreting a different provision of ANILCA supports the
>        Forest Service's interpretation of § 3210(a) and refutes the Plaintiffs'
>        interpretation.

Plaintiffs assert that *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531

(1987) supports their argument that § 3210(a) applies only in Alaska. *See* Mtn. at 4, 12, 27. But

*Amoco Production Co.* supports *the Forest Service's* plain-language interpretation of § 3210(a),

not Plaintiffs' extra-textual interpretation.  The question in *Amoco Production Co.* was whether another section of ANILCA, 16 U.S.C. § 3120, applied only within the political boundaries of the State of Alaska or applied to the outer continental shelf lands adjacent to the State of Alaska as well.  480 U.S. at 547-48.  Section 3120 required that, before the Secretary of the Interior leased the use of "public lands," the Secretary must consider effects on subsistence uses.  The Supreme Court noted that ANILCA defined "public lands" to mean "land situated *in Alaska*." *Id.* at 547 (quoting 16 U.S.C. § 3102(3) (emphasis in *Amoco Production Co.*)).  The Court emphasized the statute's inclusion of the phrase "in Alaska," a phrase which the Court noted "has a precise geographic/political meaning."  *Id.*  The Supreme Court ruled: "By its plain language, [§ 3120] imposes obligations on federal agencies with respect to decisions affecting use of federal lands *within the boundaries of the State of Alaska*."  *Id.* at 546 (emphasis in original).

Here, the *exclusion* of the phrase "in Alaska" from § 3210(a)—the statute at issue in this case—is just as important to the statute's meaning as the *inclusion* of that phrase in §§ 3102(3) and 3120—the statutes at issue in *Amoco Production Co.*  Congress could have inserted the qualifier "in Alaska," as it did in numerous sections of ANILCA and the Alaska Native Claims Settlement Act (as explained in section III below).  But it did not.  Or Congress could have used the term "public lands," which is defined to include only "land situated *in Alaska*," as it did in § 3120.  But it did not.

Instead, in § 3210(a) Congress used the statutory term "National Forest System," a term that Congress elsewhere defined to mean national forests "throughout the United States."  16 U.S.C. § 1609(a).  The Court should reject Plaintiffs' request to erase the distinctions between those statutorily defined terms.  *See, e.g., Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939

(2022) (rejecting a proposed statutory construction "that defies our usual presumption that differences in language like this convey differences in meaning" (quotation marks omitted)); *Honeycutt v. United States*, 581 U.S. 443, 454 n.2 (2017) ("the Court cannot construe a statute in a way that negates its plain text").

Plaintiffs mischaracterize the Supreme Court's opinion in *Amoco Production Co.* Plaintiffs assert that in that case, the "Supreme Court determined that Congress did not intend for <u>any</u> provision of ANILCA" "to apply outside Alaska." Mtn. at 13 (citing 480 U.S. at 550 & n.19). That is incorrect. Nothing in *Amoco Production Co.* made the broad ruling that Plaintiffs describe, either expressly or impliedly. Instead, the Supreme Court's holding in *Amoco Production Co.* depended on the statute's use of the term "in Alaska"—language that Congress chose *not* to include in § 3210(a).

In the 35 years since the Supreme Court decided *Amoco Production Co.*, no court has ruled that the decision limits or impacts the interpretation of § 3210(a) in any way. At least 18 judicial decisions issued *after* the *Amoco Production Co.* decision have addressed the geographic applicability of § 3210(a), and each has ruled that § 3210(a) applies nationwide. *See* Addendum (listing cases).

## III.   <u>Reading the term "in Alaska" into § 3210(a) would materially alter the meaning of the plain text of the statute.</u>

Section 3210(a) requires the Secretary to provide access "to nonfederally owned land within the boundaries of the National Forest System." Adding the qualifier "in Alaska" onto § 3210(a) would materially change the plain and unambiguous meaning of § 3210(a), contrary to the plain statutory text applying that provision to all "National Forest System" lands. *See Bostock*, 140 S. Ct. at 1738 ("If judges could add to, remodel, update, or detract from" statutory language, "we would risk amending statutes outside the legislative process reserved for the

people's representatives.  And we would deny the people the right to continue relying on the

original meaning of the law they have counted on to settle their rights and obligations.").

Unsurprisingly, no court has ever interpreted the statute to mean what Plaintiffs suggest.

Other provisions of ANILCA employ the term "National Forest System," the term used

in § 3210(a), or similar terms.  Where Congress employed those terms elsewhere in ANILCA,

Congress added the qualifier "in Alaska" or similar language:

- Section 708(b)(1) of ANILCA (distinguishing between "national forest lands in States other than Alaska" and "National Forest System lands *in the State of Alaska*");

- *Id.* § 708(a) (referencing "national forest system roadless areas *in Alaska*");

- *Id.* § 708(b)(2) ("National Forest lands *in the State of Alaska*");

- *Id.* § 708(b)(4) ("National Forest System lands *in the State of Alaska*");

- *Id.* § 505, codified at 16 U.S.C. § 539b(a) (concerning regulation of fisheries "affected by mining activities on national forest lands *in Alaska*");

- *Id.* § 705(c), codified at 16 U.S.C. § 539d(c) (mandating a study regarding timber yields "on national forest lands *in Alaska*").

Adopting Plaintiffs' argument would require this Court to treat the inclusion of the term "in

Alaska" in those provisions as meaningless.  That would violate the cardinal tenet of statutory

construction that terms which Congress has given different meanings should not be construed to

mean the same thing.  *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723

(2017).

Congress also used the qualifier "in Alaska" throughout ANILCA (and the Alaska Native

Claims Settlement Act) in other contexts than the National Forest System, thus demonstrating—

contrary to Plaintiff's argument—that Congress can and does limit the geographic scope of

statutes, and that courts should not casually read the term "in Alaska" into a statute.

15

- Section 203 of ANILCA, codified at 16 U.S.C. § 410hh-2 (prohibiting fees for admission "to any unit of the National Park System located *in Alaska*");

- Section 816(a) of ANILCA, codified at 16 U.S.C. § 3126 (closing national parks "*in Alaska*" to the taking of wildlife except for subsistence use);

- Section 4(b) of the Alaska Native Claims Settlement Act, codified at 43 U.S.C. § 1603(b) (extinguishing "claims of aboriginal title *in Alaska*").

As the Supreme Court cautioned in *Amoco Production Co.*: "Going behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously even under the best of circumstances." 480 U.S. at 553 (quotation marks omitted).

Had Congress intended to limit the scope of § 3210(a) to only National Forest System lands *in Alaska*, it could have specified that the statute applies only to nonfederally owned land within the *Tongass National Forest or Chugach National Forest*. The Tongass and Chugach are the only two National Forests located in Alaska, and both were established well over 100 years ago. *See* 36 C.F.R. § 200.2 (identifying the "Chugach" and "Tongass" National Forests as the only national forest administration units in Alaska). In fact, Congress did specify that certain provisions of ANILCA applied only to the Tongass or Chugach National Forests, or both. Congress did *not* similarly limit the scope of § 3210(a).

- Section 1328(a)(2) of ANILCA, codified at 16 U.S.C. § 3215 (governing applications for entry upon "land within the boundaries of a unit of the National Park System or a unit of the National Wildlife Refuge System, or a unit of the National Wilderness Preservation System *in the Tongass or Chugach National Forests*" (emphasis added));

- *Id.* § 501(b), codified at 16 U.S.C. § 539(b) (specifying management of "lands added to the Tongass and Chugach National Forests");

- *Id.* § 507(a), codified at 16 U.S.C. § 539c(a) (establishing management requirements for fisheries "in the Tongass National Forest").

Congress could have inserted text into § 3210(a) that limited its scope to only National Forest System lands in Alaska, as it did in other provisions in ANILCA. But it did not. The

16

Court should reject Plaintiffs' attempt to revise § 3210(a) to agree with what Plaintiffs think Congress *should* have said.[3]

## IV.    The legislative history of § 3210(a) indicates that Congress intended that statute to apply to all "National Forest System" lands.

The Court need not consider the legislative history of § 3210(a) because the plain text of § 3210(a) provides a clear answer to the question whether it applies nationwide or only in Alaska.  "Even those of us who sometimes consult legislative history will *never* allow it to be used to 'muddy' the meaning of 'clear statutory language.'"  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (emphasis added).  But even if the Court finds it necessary to consult the legislative history, that history supports the agency's interpretation that § 3210(a) applies to all "National Forest System" lands.  Nothing in the legislative history of § 3210(a) supports Plaintiffs' argument that § 3210(a) applies only in Alaska.

The Senate Committee on Energy and Natural Resources Report for the bill that became ANILCA states that the provision eventually enacted as 16 U.S.C. § 3210(a) "is designed to remove the uncertainties surrounding the status of the rights of the owners of non-federal lands to gain access to such lands across federal lands."  S. Rep. 96-413 at 310, 1980 U.S.C.C.A.N. 5070, 5254.  The Report notes:

---

[3] Plaintiffs' desire to rewrite "National Forest System" to mean "National Forest System lands in Alaska" is evident in Plaintiffs' Complaint (ECF No. 1), in which they shoehorn the term "in Alaska" into the text of 16 U.S.C. § 3210(a).  Those words do not appear in the text of § 3210(a).

> 188.    Under ANILCA, the Secretary of Agriculture "shall provide such access to non-federally owned land within the boundaries of the National Forest System *in Alaska* as the Secretary deems adequate to secure the owner the reasonable use and enjoyment thereof." 16 U.S.C. § 3210 (*emphasis added*); *see also* 36 C.F.R. § 251.114(a)("[T]he authorized officer shall

ECF No. 1 at ¶ 188.

> It has been the Committee's understanding that such owners had the right of access to their lands subject to reasonable regulation by either, the Secretary of Agriculture in the case of national forests, or by the Secretary of the Interior in the case of public lands managed by the Bureau of Land Management under the Federal Land Policy and Management Act of 1976. However, a recent district court decision in Utah (Utah v. Andrus et al., C79-0037, October 1, 1979, D.C.Utah) has cast some doubt over the status of these rights.[4]

The Report goes on to discuss other statutory provisions of nationwide applicability that the Committee believed may provide non-federal landowners a right of access across National Forest System or Bureau of Land Management lands to reach the non-federal land, including provisions of the Organic Act of 1897, the Wilderness Act, and FLPMA.  The Report stated: "The Committee amendment is designed to *resolve any lingering legal questions by making it clear that non-federal landowners have a right of access*."  S. Rep. 96-413 at 310 (emphasis added). Even if the Court finds it necessary to look past the plain statutory text of § 3210(a) and inquire into its legislative history, there is no indication in the Senate Committee Report that § 3210(a) was limited to Alaska.

Plaintiffs assert, without citation, that ANILCA was intended to "protect federal lands." Mtn. at 28.  But the legislative history demonstrates that, by enacting § 3210(a), Congress intended to "mak[e] it clear that non-federal landowners have a right of access."  S. Rep. 96-413 at 310.  Plaintiffs' unsupported beliefs regarding the general purpose of ANILCA cannot overcome Congress's specific objective in enacting § 3210(a): to provide "a right of access."  *Id.*

## V.    Section 3210(a) does not conflict with FLPMA.

Plaintiffs assert that Congress, having enacted standards and procedures for federal land managers to provide private access across federal lands in FLPMA in 1976, can never again

---

[4] The "recent district court decision in Utah" referenced in the Senate Committee Report is likely *Utah v. Andrus*, 486 F. Supp. 996 (D. Utah 1979) (decided October 1, 1979), which concerned the right of a mining company to access state land that was completely surrounded by federal land in Utah.

address that topic through a legislative act.  Plaintiffs assert that § 3210(a) improperly

"diminishes" and "weakens" the provisions of FLPMA authorizing access across federal lands.

Mtn. at 9, 30.  That is nonsensical.

By its plain terms, § 3210(a) overrides any other conflicting law, including FLPMA.

Section 3210(a) states: "*Notwithstanding any other provision of law*, and subject to such terms

and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such

access . . ." (emphasis added).  "As [the U.S. Supreme Court] noted previously in construing

statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the

provisions of the 'notwithstanding' section override conflicting provisions of any other section."

*Cisneros v. Alpine Ridge Grp*., 508 U.S. 10, 18 (1993).  The Supreme Court noted that courts

"generally have 'interpreted similar "notwithstanding" language . . . to supersede all other laws,

stating that '"[a] clearer statement is difficult to imagine." ' "  *Id.* (quoting *Liberty Maritime

Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991)); *see also Cisneros*, 508 U.S. at 18

(citing federal appellate decisions in accord).  From the plain terms of § 3210(a), it is clear that

Congress made a "clear[] statement" that § 3210(a) "supersede[s] all other laws," including

FLPMA.  *Id.*

The Senate Committee Report discussed above demonstrates that Congress was

undeniably aware of the provision of FLPMA providing for access across federal land (as well as

other provisions that provided access), and still deemed it necessary to enact § 3210(a) to

"resolve lingering legal questions by making it clear that non-federal landowners have a right of

access."  S. Rep. 96-413 at 310 (noting that "[i]t has been the Committee's understanding that

such owners had the right of access to their lands . . . under the Federal Land Policy and

Management Act of 1976"); *see also Jenks*, 22 F.3d at 1515-16 (explaining the right of access granted by FLPMA and Congress's perceived need to enact § 3210(a)).

Plaintiffs assert that, once Congress enacted FLPMA, which gave federal land managers discretion to grant access across federal land in specified circumstances, "[t]here was no legislative need" to enact ANILCA's nationwide access provision. Mtn. at 26. That is not accurate. FLPMA "authorized" federal land managers to "grant, issue, or renew rights-of-way over, upon, under, or through" federal lands but did not *mandate* such access in any circumstance. 43 U.S.C. § 1761(a). Plaintiffs' assertion contradicts the Senate Committee Report statement that § 3210(a) was necessary to correct a decision affecting federal lands in Utah, not Alaska, and "mak[e] it clear that non-federal landowners have a right of access." S. Rep. 96-413 at 310. Most importantly, Plaintiffs' opinion about the "need" to enact § 3210(a) is irrelevant to the geographic scope of § 3210(a) because the language of that statute is plain and unambiguous. *See Food Mktg. Inst.*, 139 S. Ct. at 2364.

## VI.  Even if § 3210(a) is ambiguous, the Forest Service's construction of that statute is a reasonable interpretation entitled to *Chevron* deference.

Section 3210(a) is not ambiguous. Congress required the Secretary to provide access to "nonfederally owned land within the boundaries of the *National Forest System*," a term defined elsewhere in Title 16 to include Forest Service lands "throughout the United States." *See* 16 U.S.C. § 1609(a). Because the text of § 3210(a) is unambiguous, "that is . . . where the inquiry should end." *Franklin Calif. Tax-Free Tr.*, 579 U.S. at 125.

Even if the Court finds that § 3210(a) is ambiguous, the Forest Service's interpretation of that statute is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, courts defer to an agency's reasonable

interpretation of an ambiguous statute that the agency is charged with administering.  *See Lissack v. Comm'r of Internal Revenue*, 68 F.4th 1312, 1322 (D.C. Cir. 2023).

Under step one of the *Chevron* analysis, courts determine "whether Congress has directly spoken to the precise question at issue" or, instead, "left a gap for the agency to fill."  *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359, 374 (D.C. Cir. 2022), cert. granted, 143 S. Ct. 2429 (quoting *Chevron*, 467 U.S. at 843).  If Congress has spoken, then "'the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  *Id.* (quoting *Chevron*, 467 U.S. at 842-43).  "If not, [courts] assume at step two that the 'Congress has empowered the agency to resolve the ambiguity' and accordingly defer to the agency's interpretation so long as it is a reasonable construction of the statute."  *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1135 (D.C. Cir. 2022) (quoting *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 315 (2014)).

Here, the Court need go no further than step one of the *Chevron* analysis because the plain text of § 3210(a) unambiguously expresses Congress's intent to require the Forest Service to provide access across "National Forest System" lands to nonfederal inholdings, such as the Berlaimont inholding at issue here.  Congress left no "gap for the agency to fill."  *Chevron*, 467 U.S. at 843.  That is the end of the *Chevron* analysis.

Even if the Court finds it necessary to proceed to step two, the Forest Service's interpretation of § 3210(a) is undeniably reasonable because it reasonably determined that § 3210(a) applies to all "National Forest System" lands (as the statute says) rather than to only National Forest System lands in Alaska (as the statute does not say).  *See* FS-003424, 003765-84, 004616, 004618-19, 004151-54, 004505-22.  Consistent with the plain text of § 3210(a), in 1991 the Forest Service issued regulations following public notice and comment that construe

§ 3210(a) to apply to nonfederally owned lands within the entire National Forest System.  56

Fed. Reg. 27,410, 27,410 (June 14, 1991).  The Forest Service's regulatory interpretation of

§ 3210(a) is undeniably a "reasonable" interpretation of that statute: the regulation simply

incorporates *verbatim* the statutory language of § 3210(a).  *Compare* 16 U.S.C. § 3210(a)

(requiring the Forest Service to provide "access to nonfederally owned land *within the*

*boundaries of the National Forest System*") *with* 36 C.F.R. § 251.111 (defining a "Landowner"

who is entitled to access rights as "the owner(s) of non-Federal land or interests in land *within*

*the boundaries of the National Forest System*").  *See also* 36 C.F.R. § 251.110(b) ("These

regulations apply to access across all National Forest System lands.")

Plaintiffs cannot establish that the Forest Service's interpretation of § 3210(a)—as set

forth in the 1991 regulations and in the Decision—is an "unreasonable" interpretation of

§ 3210(a) because the regulations replicate exactly the text of § 3210(a).  The Court should defer

to the Forest Service's regulatory interpretation.  *See Guedes v. Bureau of Alcohol, Tobacco,*

*Firearms & Explosives*, 920 F.3d 1, 32 (D.C. Cir. 2019) (deferring to agency's regulation

interpreting a statute).

## <u>CONCLUSION</u>

The Court should grant partial summary judgment in favor of Defendants and Intervenor-

Defendant and rule that, as a matter of law, 16 U.S.C. § 3210(a) applies to the nonfederally

owned land owned by Intervenor-Defendant Berlaimont located within the boundaries of the

National Forest System lands at issue in this litigation.  The Court should dismiss Plaintiffs'

Claim One with prejudice.

Respectfully submitted this 18th day of August, 2023.

WILLIAMS WEESE PEPPLE & FERGUSON, P.C.

*s/ John H. Bernetich*

Ezekiel J. Williams (Bar No. CO0056)
John H. Bernetich (Bar No. 1018769)
1801 California St., Suite 3400
Denver, CO 80202
303-861-2828
Email: zwilliams@williamsweese.com
       jbernetich@williamsweese.com

*Attorneys for Berlaimont Estates, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2023, a true and correct copy of the foregoing **BERLAIMONT ESTATES, LLC'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of Court using the CM/ECF system which will send notification to all attorneys of record.

*/s/ Patricia Krakowski*

WILLIAMS WEESE PEPPLE & FERGUSON, P.C.

23