TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

EMMA L. HAMILTON
Trial Attorney
CA Bar No. 325360
Natural Resources Section
999 18th Street – South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1361
Fax: (303) 844-1350
emma.hamilton@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILDERNESS WORKSHOP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-00678-JMC |
| | ) | |
| v. | ) | |
| | ) | |
| MERYL HARRELL, Deputy Under | ) | ORAL ARGUMENT REQUESTED |
| Secretary for Natural Resources and | ) | |
| Environment, U.S. Department of | ) | |
| Agriculture, *et al.*, | ) | |
| | ) | |
| Federal Defendants, and | ) | |
| | ) | |
| BERLAIMONT ESTATES, LLC, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |
| | ) | |

**<u>FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 3

    I.    The Berlaimont Estates Access Decision ................................................. 3

    II.   Plaintiffs' Challenge to the Access Decision ........................................ 4

LEGAL BACKGROUND ................................................................................................. 5

STANDARD OF REVIEW .............................................................................................. 7

ARGUMENT ...................................................................................................................... 7

    I.    ANILCA's Plain Language Shows Section 3210(a) is Nationally Applicable ...... 7

        A.    Section 3210(a) applies to the "National Forest System," which extends across the nation without limitation to Alaska ............................ 8

        B.    Canons of statutory construction support interpretation of the plain text of Section 3210(a) as applying nationwide ...................................... 10

    II.   Legislative History Confirms Section 3210(a)'s Nationwide Applicability ......... 13

        A.    Pre-enactment legislative statements reveal Congress's intent and understanding that Section 3210(a) would apply nationwide .................. 14

        B.    Contemporaneous legislative history further confirms Section 3210(a)'s nationwide applicability .......................................................... 18

    III.  FLPMA Does Not Override Nor Obviate the Need for Section 3210(a) of ANILCA ................................................................................................... 19

    IV.  Numerous Courts Have Held that Section 3210(a) Applies Nationwide ............. 21

    V.   The Forest Service's 1991 Regulations Reasonably Interpret Section 3210(a) as Applying Nationwide ...................................................................... 25

CONCLUSION................................................................................................................. 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. United States,*
255 F.3d 787 (9th Cir. 2001) ............................................................................... 21

*Adirondack Med. Ctr. v. Sebelius,*
740 F.3d 692 (D.C. Cir. 2014) ............................................................................... 7

*Allen v. McCurry,*
449 U.S. 90 (1980) ................................................................................................ 25

*Am. Fed. of Gov't Emps. v. Gates,*
486 F.3d 1316 (D.C. Cir. 2007) ........................................................................... 18

*Am. Hosp. Ass'n v. Becerra,*
142 S. Ct. 1896 (2022) ........................................................................................... 7

*Amoco Production Company v. Village of Gambell,*
480 U.S. 531 (1987) .............................................................................................. 24

*Breaker v. United States,*
977 F. Supp. 2d 921 (D. Minn. 2013) ................................................................... 23

*Brodie v. Burwell,*
No. 15-322 (JEB), 2016 WL 3248197 (D.D.C. June 13, 2016) .............................. 25

*\*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) .......................................................................................... 12, 13

*Burnett v. Wash. Metro. Area Transit Auth.,*
139 F. Supp. 3d 231 (D.D.C. 2015) ........................................................................ 7

*Cabinet Res. Grp. v. U.S. Forest Serv.,*
No. CV 00-225-M-DWM, 2004 WL 966086 (D. Mont. Mar. 30, 2004) ................ 23

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984) ......................................................................................... 7, 26

*Crowley Caribbean Transp., Inc. v. United States,*
865 F.2d 1281 (D.C.Cir.1989) ............................................................................... 20

*Ctr. for Biological Diversity v. McAleenan,*
404 F. Supp. 3d 218 (D.D.C. 2019) ........................................................................ 7

*Delany v. United States Forest Serv.,*
No. CV062265PHX-SMM, 2007 WL 4219436 (D. Ariz. Nov. 28, 2007) ............... 22

*Delany v. United States. Forest Serv.,*
No. CV 04-2352-PCT-MHB, 2007 WL 9724565 (D. Ariz. July 10, 2007) .............. 22

ii

*Dobbs v. United States Forest Serv.*,
No. CIV-16-112-RAW, 2017 WL 6598537 (E.D. Okla. Dec. 26, 2017) ................................ 23

*Donnelly Commodities Inc. v. BNSF Ry. Co. (In re Rail Freight Fuel Surcharge Antitrust Litig.*,
34 F.4th 1 (D.C. Cir. 2022) ................................................................................................... 14

*Dunn v. Commodity Futures Trading Comm'n*,
519 U.S. 465 (1997) .............................................................................................................. 12

*Estate of Giovacchini v. Commissioner*,
No. 20122-05, 2013 Tax Ct. WL 275540 (T.C. Jan. 24, 2013) .............................................. 23

*Fitzgerald Living Tr. v. United States*,
460 F.3d 1259 (9th Cir. 2006) ......................................................................................... 21, 22

*Fitzgerald v. United States*,
932 F. Supp. 1195 (D. Ariz. 1996) ........................................................................................ 22

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ............................................................................................................ 8

*Friends of Columbia Gorge, Inc. v. United States Forest Serv.*,
546 F. Supp. 2d 1088 (D. Or. 2008) ...................................................................................... 23

*Genus Med. Techs. LLC v. United States FDA*,
994 F.3d 631 (D.C. Cir. 2021) .............................................................................................. 14

*George v. McDonough*,
142 S. Ct. 1953 (2022) ....................................................................................................... 9, 10

*Grill v. Quinn*,
No. 2:10-CV-0757 GEB GGH, 2013 WL 3146803 (E.D. Cal. June 18, 2013) ...................... 23

*Grill v. Quinn*,
No. 2:10-CV-0757 GEB GGH, 2013 WL 3992117 (E.D. Cal. Aug. 1, 2013) ........................ 23

*Guedes v. BATFE*,
45 F.4th 306 (D.C. Cir. 2022) ................................................................................................. 7

*Gulf Oil Corp. v. Copp Paving Co., Inc.*,
419 U.S. 186 (1974) .............................................................................................................. 16

*Hall v. Hall*,
138 S. Ct. 1118 (2018) ............................................................................................................ 9

*Hearth, Patio & Barbecue Ass'n v. United States DOE*,
706 F.3d 499 (D.C. Cir. 2013) ................................................................................................ 7

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421 (1987) .............................................................................................................. 16

*Idaho Conservation League v. Caswell*,
No. CV 95-394-S-MHW, 1996 WL 938215 (D. Idaho Aug. 12, 1996) ................................ 22

*Int'l Broth. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*,
    814 F.2d 697, (D.C. Cir. 1987) ................................................................. 16

*Liberty Mar. Corp. v. United States*,
    928 F.2d 413 (D.C. Cir. 1991) ................................................................. 20

*McFarland White Ranch v. Schafer*,
    No. CV-08-77-BLG-RFC-CSO, 2009 WL 1392108 n.4 (D. Mont. May 15, 2009) ............... 23

*Mine Land Holdings, LLC v. U.S. Dep't of Agric.*,
    No. CV 17-65-H-CCL, 2018 WL 1640866 (D. Mont. Apr. 5, 2018) .................. 23

*\*Mont. Wilderness Asso., etc. v. United States Forest Serv.*,
    655 F.2d 951 (9th Cir. 1981) ................................................. 1, 11, 19, 21

*Mountain States Legal Found. v. Espy*,
    833 F. Supp. 808 (D. Idaho 1993) ........................................................... 22

*\*Nat'l Parks Conservation Ass'n v. United States*,
    177 F. Supp. 3d 1 (D.D.C. 2016) ........................................................... 22

*Nat'l Veterans Legal Servs. Prog. v. United States*,
    291 F. Supp. 3d 123 (D.D.C. 2018) ........................................................ 18

*Norton v. United States*,
    No. 21-0724 (CKK), 2022 WL 741851 (D.D.C. March 11, 2022) ................. 12

*Overland Ditch & Reservoir Co. v. United States*,
    No. 98 N-1149, 1999 WL 1087478 (D. Colo. June 17, 1999) ................. 22

*Peper v. United States Dep't of Agric.*,
    478 F. App'x 515 (10th Cir. 2012) ......................................................... 22

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
    551 U.S. 224 (2007) ............................................................................... 19

*R.J. Reynolds Tobacco Co. v. United States Dep't of Agric.*,
    130 F. Supp. 3d 356 (D.D.C. 2015) ....................................................... 10

*\*Rocky Mountain Wild v. Dallas*,
    No. 19-cv-01512-CMA, 2020 WL 1529181 (D. Colo. March 31, 2020) ........... 8, 22

*Russello v. United States*,
    464 U.S. 16, (1983) ................................................................................. 12

*Sturgeon v. Frost*,
    139 S. Ct. 1066 (2019) ........................................................................... 24

*Sturgeon v. Frost*,
    577 U.S. 424 (2016) ........................................................................... 5, 24

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) ............................................................................. 9

*United States v. Jenks,*
    22 F.3d 1513 (10th Cir. 1994) .................................................................. 19, 22, 23

*United States v. Jenks,*
    804 F. Supp. 232 (D.N.M. 1992) ....................................................................... 23

*United States v. Srnsky,*
    271 F.3d 595 (4th Cir. 2001) ............................................................................ 24

*United States v. Williams,*
    553 U.S. 285 (2008) ......................................................................................... 10

*Utah v. Andrus,*
    486 F. Supp. 995 (D. Utah 1979) ..................................................................... 15

*Wilderness Soc. v. Morton,*
    479 F.2d 842 (D.C. Cir. 1973) .................................................................... 16, 17

*Wilderness Watch v. King,*
    No. CV 12-102-M-DWM, 2013 WL 3331264 (D. Mont. July 1, 2013) ................. 23

*Wilkins v. United States,*
    143 S. Ct. 870, 215 L.Ed.2d 116 (2023) .......................................................... 21

*Yellen v. Confederated Tribes of the Chehalis Reservation,*
    141 S. Ct. 2434 (2021) .................................................................................... 24

**Statutes**

16 U.S.C. § 1604(a) (1976) ...................................................................................... 9

16 U.S.C. § 3102 ................................................................................................. 8, 12

16 U.S.C. § 3102(3) ....................................................................................... 6, 10, 11

16 U.S.C. § 3102(4) ......................................................................................... 5, 6, 10

16 U.S.C. § 3120 ...................................................................................................... 24

16 U.S.C. § 3170(a) ................................................................................................. 13

16 U.S.C. § 3203(a) ................................................................................................. 13

16 U.S.C. § 3210 ................................................................................................ 11, 25

16 U.S.C. § 3210(a) .................................................................................. 2, 6, 8, 13, 20

43 U.S.C. § 1721(f) ................................................................................................... 9

43 U.S.C. § 1761(b)(3) ............................................................................................ 19

Pub. L. No. 93-378, 88 Stat. 476 (Aug. 17, 1974) ................................................... 8

Pub. L. No. 96-487, 94 Stat. 2371 (Dec. 2, 1980) ............................................... 5, 17

**Regulations**

36 C.F.R. § 251 ........................................................................................................... 1, 4

36 C.F.R. § 251.110(b) ...................................................................................................... 6

36 C.F.R. § 251.111 .......................................................................................................... 6

36 C.F.R. § 251.114(a) ...................................................................................................... 6

36 C.F.R. Pt. 251 .............................................................................................................. 3

**Other Authorities**

42 Fed. Reg. 59688 (Nov. 18, 1977) ................................................................................. 9

44 Fed. Reg. 3087 (Jan. 10, 1979) .................................................................................... 9

44 Fed. Reg. 53938 (Sept. 17, 1979) ................................................................................ 9

56 Fed. Reg. 27,410 (June 14, 1991) ........................................................................... 6, 26

H.R. 39, 96th Cong. (Aug. 19, 1980) .............................................................................. 15

H.R. 39, 96th Cong. (Jan. 15, 1979) .......................................................................... 14, 15

H.R. Rep. No. 1521 96th Cong., 2d Sess. (1980) ........................................................... 18

S. Rep. No. 96-413, 1(980) .............................................................................................. 17

## <u>TABLE OF ACRONYMS</u>

| | |
|---|---|
| ANILCA | Alaska National Interest Lands Conservation Act |
| APA | Administrative Procedure Act |
| FEIS | Final Environmental Impact Statement |
| FLPMA | Federal Land Policy and Management Act |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |
| NPS | National Park Service |
| ROD | Record of Decision |

## INTRODUCTION

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA" or "the Act"). Section 3210(a) of ANILCA established that landowners have a right of access to private land inholdings surrounded entirely by National Forest System lands. The next year, the Ninth Circuit resolved a dispute over the applicability of that access provision outside Alaska, holding that Section 3210(a) applies nationwide. *See Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951 (9th Cir. 1981), *cert denied* 455 U.S. 989 (1982). In 1991, following a formal notice and comment process, the Forest Service promulgated regulations governing rights of access to non-Federal lands. These regulations likewise interpreted ANILCA's access provision to be nationally applicable. And since then, courts have affirmed or applied the same interpretation in more than twenty cases involving Forest Service grants of access to private inholdings surrounded by National Forest System lands. Under its binding regulations, the Forest Service has continued to apply Section 3210(a) nationwide for more than three decades.

The Berlaimont Estates Access Decision is one such application. In 2015, Berlaimont Estates, LLC ("Berlaimont" or "Berlaimont Estates"), the owner of a private land inholding surrounded by National Forest System lands, applied to construct an access route across the White River National Forest under ANILCA and the Forest Service's implementing regulations, 36 C.F.R. § 251, Subpart D. The Forest Service analyzed Berlaimont's access rights under ANILCA, determined what level of access was sufficient for the reasonable use and enjoyment of the inholding, and prepared an Environmental Impact Statement under the National Environmental Policy Act ("NEPA") to consider how best to grant the ANILCA-mandated access. The Agency then issued a Final Record of Decision ("ROD") approving an access route

on March 10, 2023. One of the legal foundations upon which the ROD rests is that Section 3210(a) of ANILCA provides Berlaimont with a right of adequate access to its private land. 16 U.S.C. § 3210(a).

The sole issue currently before the Court is Plaintiffs' challenge to the Forest Service's longstanding interpretation of ANILCA's access provision. Plaintiffs claim Section 3210(a) is not applicable on National Forest System lands outside Alaska, and that the Berlaimont Access Decision was thus arbitrary, capricious, and contrary to law. But Plaintiffs' arguments fail as a matter of law. As described further below, the nationwide application of Section 3210(a) is the best reading of the statute and is amply supported by the statute's plain text, common principles of statutory interpretation, ANILCA's pre-enactment legislative history, additional contemporaneous legislative history, and more than thirty years of caselaw.

Besides raising numerous points and arguments not relevant to the discrete issue currently before the Court, Plaintiffs sidestep the plain language of Section 3210(a) and ANILCA's definitional provision to argue that language in the Act that *does* apply specifically to Alaska, combined with the Act's overall focus on Alaska, limits the entire statute by implication. Plaintiffs also seek to undermine (and even ignore) the legislative history that confirms and further supports nationwide application of Section 3210(a). Plaintiffs' arguments fail. The Court should look to the plain text of the provision, its legislative history, and the robust caselaw applying Section 3210(a) nationwide to determine that the Forest Service's longstanding interpretation of ANILCA's access provision is the best reading of the statute.

The Court should deny Plaintiffs' Motion for Partial Summary Judgment and grant Federal Defendants' Cross-Motion for Partial Summary Judgment on this issue.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Berlaimont Estates Access Decision

On March 10, 2023, White River National Forest Supervisor Scott Fitzwilliams signed the ROD issuing a special use authorization to Berlaimont Estates to construct an access route across the White River National Forest in Eagle County, Colorado (hereafter "the Access Decision").  *See* Berlaimont Estates Access Route Record of Decision ("ROD") (March 10, 2023), FS-007116-71.  The Access Decision grants access to a 680-acre private land parcel owned by Berlaimont Estates that is an inholding within the White River National Forest in Eagle County, Colorado.  That is, the private parcel is completely surrounded by National Forest System land.  *See* ROD at 1, FS-007118.

The Access Decision followed years of careful analysis and evaluation.  In 2015, pursuant to Forest Service regulations governing access to non-federal lands under ANILCA, 36 C.F.R. Part 251, Subpart D, Berlaimont applied for an access route across the White River National Forest.  ROD at 2, FS-007119.  Berlaimont sought a special use authorization to construct a route that would "provide reliable, year-round vehicular access to the developable portions (the northern portion) of the Berlaimont Estates' private property so that they might develop 19 individual lots—35 acres or larger—consistent with Colorado statute and Eagle County authority."  *Id.* (internal citations omitted).

The Forest Service prepared a Final Environmental Impact Statement ("FEIS") to analyze the potential environmental effects of the proposal under NEPA.  The FEIS discussed the applicability of ANILCA and the Forest Service regulations governing access to non-federal lands, FEIS at 4-6, FS-004152-54, and also included a written "ANILCA Determination."  FS-004506-44 (FEIS Appendix C).  In the ANILCA Determination, the Forest Service explained

that "Section 1323(a) [codified at 3210(a)] of [ANILCA] requires the Forest Service to provide

access to private inholdings adequate to secure the owner reasonable use and enjoyment of that

inholding property," and that this requirement "is codified in agency regulations at 36 CFR § 251

Subpart D," which "provide guidance for implementing the statute's intent."  FEIS at C-2, FS-

004506.  The Forest Service accordingly followed the guidance set forth in its regulations to

"make a determination as to what constitutes 'adequate access'" and document that

determination.  *Id.*

In the Final ROD, the Forest Service summarized the results of its ANILCA

Determination.  ROD at 10-12, FS-007127-29.  The agency also reiterated that, under its

governing regulations and explanation of those regulations in Forest Service Manual 2700, "the

provisions of [ANILCA] §1323(a) [codified at 3210(a)] apply to all National Forest System

lands" and ANILCA "directs the Forest Service to provide adequate access to private property

fully contained within [National Forest System] lands (inholdings)."  ROD at 3, FS-007120.

## II.    Plaintiffs' Challenge to the Access Decision

Plaintiffs initiated this action challenging the Access Decision on March 13, 2023.  *See*

Compl., ECF No. 1.[1]  Plaintiffs bring nine claims for relief.  Claim One challenges the Access

Decision pursuant to ANILCA.  *See* 1st Am. Compl. ("Am. Compl.") ¶¶ 187-197, ECF No. 15-1.

Relevant here, Claim One alleges that "[a]pplication of ANILCA to National Forest System

lands outside of Alaska is precluded by the plain language of the statute," *id.* ¶ 190, that

"[a]pplying ANILCA to the Berlaimont Estates access request is contrary to law," *id.* ¶ 191, and

that "[t]he 2020 EIS and [Final ROD], and resulting decisions are therefore arbitrary and

capricious, not in accordance with law, and without observance of procedure required by law

---

[1] Plaintiffs filed an Amended Complaint on April 18, 2023.  *See* 1st Am. Compl., ECF No. 15-1.

under the [Administrative Procedure Act ("APA")] and other Federal Statutes," *id.* ¶ 197.

The Parties jointly proposed a briefing schedule reflecting agreement "that portions of Claim 1 involving the applicability of ANILCA's access provision outside of Alaska is a question of law that should be resolved independently of the remainder of the claims and defenses." ECF No. 25 at 2. In a June 23, 2023 Minute Order, the Court adopted a briefing schedule allowing the Parties to brief this discrete legal issue on cross-motions for partial summary judgment. Thus, the applicability of ANILCA's access provision outside Alaska is the sole issue currently before the Court.[2]

## **LEGAL BACKGROUND**

ANILCA was signed into law on December 2, 1980. Pub. L. No. 96-487, 94 Stat. 2371. ANILCA designated roughly 104 million acres of federal lands in Alaska for "preservation purposes," including national parks and preserves, national wildlife refuges, wild and scenic rivers, national monuments, and designated wilderness areas. *See Sturgeon v. Frost*, 577 U.S. 424, 431 (2016). Such "federal preservation lands in Alaska were placed into 'conservation system units,' which were defined to include 'any unit in Alaska of the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers Systems, National Trails System, National Wilderness Preservation System, or a National Forest Monument.'" *Id.* (quoting 16 U.S.C. § 3102(4)).

---

[2] As this is a purely legal question of statutory interpretation, Federal Defendants have provided a brief overview of the challenged decision but do not believe a lengthy statement of facts is necessary for the Court's review. Moreover, this Court's Local Rules do not require a separate statement of facts in cases brought under the Administrative Procedure Act. *See* LCvR 7(h)(2). However, because Federal Defendants cite key agency documents for background on the Access Decision, *see supra* Part I ("The Berlaimont Estates Access Decision"), Federal Defendants agree to confer with Plaintiffs and Defendant-Intervenor to create "an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon" in briefing on the cross-motions for partial summary judgment. *See* LCvR 7(n)(1).

Although much of ANILCA is particular to the State of Alaska and these Alaska-specific "conservation system units," Section 3210(a) of ANILCA is not.  By its plain terms, Section 3210(a) applies to all "nonfederally owned land within the boundaries of *the National Forest System*."  16 U.S.C. § 3210(a) (emphasis added).  And it provides that: "subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof."  *Id.* While other normally broadly applicable terms like "public lands" and "conservation system unit" are expressly defined in ANILCA as limited to Alaska when used in the statute, *see* 16 U.S.C. §§ 3102(3), (4), neither "the National Forest System" nor "National Forest System lands" are defined in ANILCA as limited to Forest units or lands in Alaska.

Consistent with the statutory text, Forest Service regulations promulgated in 1991 through a public notice and comment process interpret Section 3210(a) as applying to private access claims throughout the National Forest System.  *See* 36 C.F.R. § 251.110(b) ("These regulations apply to access across all National Forest System lands"); 56 Fed. Reg. 27,410, 27,410 (June 14, 1991) ("The rules merely implement the authority granted by ANILCA to limit [t]he mode and manner of access across the Federal land.").  The regulations define "adequate access" as "a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with similarly situated non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources."  36 C.F.R. § 251.111.  The regulations also clarify that the "authorizing officer shall determine what constitutes reasonable use and enjoyment of the lands based on contemporaneous uses made of similarly situated lands in the area and any other relevant criteria."  36 C.F.R. § 251.114(a).

6

## STANDARD OF REVIEW

Cross-motions for summary judgment based on "questions of interpretation that a federal court may have to answer in parsing out the meaning of any relevant statutes," involve "no questions of fact, because whether or not a statute or the Constitution grants the [Executive Branch] the power to act in a certain way is a pure question of law." *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 233 (D.D.C. 2019) (citations omitted). And when "both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." *Burnett v. Wash. Metro. Area Transit Auth.*, 139 F. Supp. 3d 231, 235 (D.D.C. 2015).

In resolving a challenge to an agency's interpretation of a statute, the Court should examine "'the text, structure, purpose, and history of an agency's authorizing statute' to determine whether a provision reveals congressional intent about the precise question at issue." *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 696 (D.C. Cir. 2014) (quoting *Hearth, Patio & Barbecue Ass'n v. U.S. Dep't of Energy*, 706 F.3d 499, 503 (D.C. Cir. 2013)). In doing so courts may look broadly to the "text and structure of the statute," *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1904 (2022), as well as linguistic canons of construction, *see Guedes v. ATF*, 45 F.4th 306, 313 (D.C. Cir. 2022). If the Court "cannot readily divine Congress' clear intent," it "defer[s] to the agency's interpretation of the statute so long as it is 'based on a permissible construction of the statute.'" *Adirondack Med. Ctr.*, 740 F.3d at 696 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

## ARGUMENT

I.    **ANILCA's Plain Language Shows Section 3210(a) is Nationally Applicable**

Plaintiffs urge that, in resolving disputes over statutory interpretation, "a court's proper

starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *See* Pls.' Partial Mot. for Summ. J. ("Pls.' Br.") 20, ECF No. 29 (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019)). Federal Defendants agree. Indeed, the plain language of Section 3210(a), further supported by the plain language of ANILCA's definitions section and the plain language of ANILCA's contemporary statutes, demonstrates that Section 3210(a) applies nationwide.

### A. Section 3210(a) applies to the "National Forest System," which extends across the nation without limitation to Alaska.

The plain text of section 3210(a)—which applies to "nonfederally owned land within the boundaries of *the National Forest System"*—makes clear that the provision is not limited to Alaska. 16 U.S.C. § 3210(a) (emphasis added); *see also Rocky Mountain Wild v. Dallas*, No. 19-cv-01512-CMA, 2020 WL 1529181, at *2 (D. Colo. March 31, 2020) ("[T]he terms of the ANILCA's access provision are not explicitly limited to Alaska. Rather, the terms refer to 'land within the boundaries of the National Forest System,' which extends across the nation.").

ANILCA does not define the "National Forest System." *See* 16 U.S.C. § 3102. But by the time ANILCA was enacted, the "National Forest System" had become a defined and established term of art following passage of the Forest and Rangeland Renewable Resources Planning Act ("Resources Planning Act") in 1974. Pub. L. 93-378, 88 Stat. 476 (Aug. 17, 1974) ("Congress declares that the National Forest System consists of units of Federally owned forest, range, and related lands throughout the United States and its territories, united into a nationally significant system dedicated to the long-term benefit for present and future generations[.]").

Congress adopted the defined term "National Forest System," without modifying the Resources Planning Act's definition, in other statutes before its use in ANILCA in 1980. The National Forest Management Act ("NFMA") was a 1976 amendment to the Resources Planning

Act and expressly required promulgation of land and resource management plans for all "units" of the "National Forest System." 16 U.S.C. § 1604(a) (1976). The 1976 Federal Land Policy and Management Act ("FLPMA"), also refers to the "National Forest System" throughout the statute and expressly notes that the term is defined in the Resources Planning Act. 43 U.S.C. § 1721(f).

The Forest Service also adopted the term, without altering its definition, in nationwide planning and inventory efforts prior to 1980. For example, the preamble to the final rule promulgating NFMA's implementing regulations references the "National Forest System" throughout. *See, e.g.*, 44 Fed. Reg. 53938, 939, 949, 954 (Sept. 17, 1979). And the Forest Service's 1977 Roadless Area Review and Evaluation was a nationwide roadless inventory that evaluated lands for the "entire National Forest System." 42 Fed. Reg. 59688 (Nov. 18, 1977). It was noticed in the *Federal Register* in 1979 as addressing all "National Forest System" lands, including, but not limited to, those in Alaska. 44 Fed. Reg. 3087, 3088 (Jan. 10, 1979).

Thus, the term "National Forest System" had a well-understood meaning at the time of ANILCA's passage in 1980. And "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George v. McDonough*, 142 S. Ct. 1953, 1959 (2022) (quoting *Taggart* v. *Lorenzen*, 139 S. Ct. 1795, 1801 (2019)) (cleaned up). In *George*, the Supreme Court held that a longstanding regulatory definition of a term of art regarding veterans' benefits applied to a newer statute employing that same term when the statute "enacted no new 'definition' or other provision indicating any departure from the 'same meaning' that the [Veterans Administration] had long applied." *Id.* (quoting *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018)). Likewise here, there is no new definition nor any indication in ANILCA that Congress sought to limit the specific and established definition of

"the National Forest System" to lands within Alaska when Congress used that congressionally defined term in ANILCA in 1980.

To the contrary, ANILCA's statutory definition section indicates that—where it intended to do so—Congress was fully capable of limiting otherwise nationally applicable terms specifically to Alaska for purposes of the Act.  *See, e.g.*, 16 U.S.C. § 3102(3) ("The term 'public lands' means land situated *in Alaska* . . . .") (emphasis added);  § 3102(4) ("The term 'conservation system unit' means any unit *in Alaska* of the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers Systems, National Trails System, National Wilderness Preservation System, or a National Forest Monument . . . .") (emphasis added).  That Congress expressly did *not* include such a limiting definition of the "National Forest System" demonstrates that it intended that term of art to apply to the statute under the same definition it carried in the Resources Planning Act, NFMA, FLPMA, and agency planning and inventory efforts in the years preceding passage of ANILCA.  *See George*, 142 S. Ct. at 1959.

### B.  Canons of statutory construction support interpretation of the plain text of Section 3210(a) as applying nationwide.

Plaintiffs argue that the linguistic canons of *noscitur a sociis* and *in pari materia* support their preferred interpretation of Section 3210(a) because other, nearby statutory provisions do not apply beyond Alaska.  *See* Pls.' Br. 28-29.  Not so.  This Court has clarified that *noscitur a sociis*, words are known by the company they keep, is an "established interpretative canon[]" that applies to words appearing together in a list.  *R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*, 130 F. Supp. 3d 356, 372 (D.D.C. 2015); *see also* Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012) (explaining that the canon of *noscitur a sociis* holds that "words grouped in a list should be given related meanings"); *United States v.*

*Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated.").

Here, Section 3210(a) does not contain a list of terms otherwise limited to Alaska that suggest "the National Forest System" should be so limited.  Plaintiffs' attempt to apply this well-established canon to different *provisions* appearing near each other in the statute is unpersuasive. For example, Section 3210(b), which follows Section 3210(a) and establishes access rights to inholdings surrounded by "public lands" administered by the Department of the Interior, applies only in Alaska because ANILCA expressly defines any use of the term "public lands" in the Act as limited to Alaska.  *See* 16 U.S.C. § 3102(3).  The canon of *noscitur a sociis* cannot fabricate a limiting definition of the "National Forest System" where none exists in the Act.

Nor does the related-statutes canon of *in pari materia*, or "in the same matter," *In pari materia*, BLACK'S LAW DICTIONARY (11th ed. 2019), support Plaintiffs' preferred interpretation. Though the Ninth Circuit noted that the parties in *Montana Wilderness Association* apparently agreed at oral argument that Section 3210(a) "is in pari materia with" Section 3210(b),[3] *see* 655 F.2d at 954, the Ninth Circuit held only that such an interpretation provided "tentative support for the view that [Section 3210(a)] applies only to national forests in Alaska."  *Id.* at 954-55. The court then held that any such tentative support was outweighed by legislative history.  *Id.* at 957.  And while Plaintiffs rely heavily on the *in pari materia* discussion in *Montana Wilderness* (while sidestepping the court's ultimate conclusion that Congress intended Section 3210(a) to apply nationwide), *see* Pls.' Br. 29, the Supreme Court has rejected a similar attempt to read

---

[3] The Ninth Circuit's opinion in *Montana Wilderness Association*, as well as the legislative history described below, refer to Section 3210 as Section 1323, as it was enumerated in the text of the statute prior to codification at 16 U.S.C. § 3210.  For ease for reference, this brief replaces later references to "Section 1323" with "Section 3210."

statutory provisions *in pari materia* when "[t]he language of [one] substantive provision differs from that of the [other] provision in important ways." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006).

*Burlington Northern* involved the interpretation of two provisions of the Civil Rights Act of 1964: a provision prohibiting discrimination in employment and an anti-retaliation provision prohibiting discrimination more broadly. *Id.* at 61-63. The petitioner argued that the two provisions should be read *in pari materia* to limit the broader provision to the employment context. *Id.* at 62. But the Supreme Court rejected this position, explaining first that "the question is whether Congress intended its different words to make a legal difference," and that there is a presumption that, "where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Id.* at 62-63 (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). In line with the Supreme Court's instruction that differences in statutory language should be presumed intentional, here the Court should give meaning to the clear statutory distinction between Section 3210(b) and Section 3210(a). *See id.* Section 3210(b) applies to "public lands," which Congress expressly limited to Alaska for purposes of the Act, while Section 3210(a) applies to the "National Forest System," for which Congress chose not to apply a similar geographically limiting definition.[4] *See* 16 U.S.C. §§ 3102, 3210.

---

[4] Indeed, had Congress intended the meaning advocated by Plaintiffs it would have been much simpler to define public lands to also include National Forest System lands in Alaska. The fact that Congress included two virtually identical provisions in successive subsections indicates not that the subsections have the same meaning but that they have a different meaning. Otherwise, Section 3210(a) is "mere surplusage" that could have been incorporated into 3210(b) with a simple definitional change. *See Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("legislative enactments should not be construed to render their provisions mere surplusage"); *see also Norton v. United States*, No. 21-0724 (CKK), 2022 WL 741851, at *4 (D.D.C. March 11, 2022) ("A court may not presume that Congress intended for whole words and phrases of a statute to be effectively meaningless or mere surplusage.") (citations omitted).

Consideration of the statute as a whole also confirms that Congress did not intend Section 3210(a) to be limited to Alaska, as it included explicit limiting provisions elsewhere in ANILCA. For example, Section 3170(b) provides specifically tailored access to private inholdings surrounded by "conservation system units," which are defined in the Act as limited to Alaska, and was designed to address the particularized concerns of Alaskans by allowing use of snow machines, motorboats, and airplanes "for traditional activities" and "for travel to and from villages and homesites." 16 U.S.C. § 3170(a). In addition, Section 3203(a) explicitly limits the applicability of the Act's changes to the requirements of the Wilderness Act to the State of Alaska. 16 U.S.C. § 3203(a). That just seven sections later Congress included a provision requiring that "[n]otwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary, shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof," 16 U.S.C. § 3210(a), *without* limiting that provision to the State of Alaska, is strong evidence that "Congress intended its different words to make a legal difference."[5] *See Burlington N.*, 548 U.S. at 62-63.

In sum, the plain language of ANILCA demonstrates that Congress intended Section 3210(a) to establish a right of access to private land inholdings across all lands in the National Forest System. The Court should reject Plaintiffs' contrary interpretation based on the plain language of the statute alone.

## II.    Legislative History Confirms Section 3210(a)'s Nationwide Applicability

Though the plain text of ANILCA is enough to show that the Forest Service's

---

[5] This provision amended FLPMA's right-of-way provisions specifically for access to inholdings completely surrounded by National Forest System lands. *See infra* Section III.

longstanding interpretation of Section 3210(a) is the best reading of the statute, legislative history provides strong, additional support for this interpretation.  Despite Plaintiffs' suggestions to the contrary, examination of legislative history remains a valid tool of statutory interpretation that may supplement examination of the plain language itself, should the Court find further examination necessary.  *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 34 F.4th 1, 9 (D.C. Cir. 2022) ("In interpreting a statute, this court begins 'with the language of the statute itself' and, if necessary, 'may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.'") (quoting *Genus Med. Techs. LLC v. FDA*, 994 F.3d 631, 637 (D.C. Cir. 2021) (quotation marks and citations omitted)).

### A.  Pre-enactment legislative statements reveal Congress's intent and understanding that Section 3210(a) would apply nationwide.

Plaintiffs are flatly wrong in stating that "there was no suggestion during the floor debate that section 3210(a) was intended to have a nationwide impact."  Pls.' Br. 31.  To the contrary, as described below, there was significant pre-enactment discussion about the nationwide impact of Section 3210(a), including the House voting down a proposed amendment that would have ensured the entire Act applied only to Alaska.

On January 15, 1979, the Senate put forth its version of ANILCA, which mostly reflected and expanded the original House version.  S. 9, 96th Cong. (Jan. 15, 1979); H.R. 39, 96th Cong. (Jan. 15, 1979).  At that juncture, neither version of the bill contained the access to inholdings provision that would later be included as Section 3210(a).  That provision first appeared in the amended version of the bill put forth by the Senate Committee on Energy and Natural Resources on November 14, 1979.  The Committee's Report, released along with the proposed bill, explains that Section 3210 was "designed to remove the uncertainties surrounding the status of the rights of the owners of non-federal lands to gain access to such lands across federal lands," and

emphasizes that it was "designed to resolve any lingering legal questions" about rights of access to private land under FLPMA "by making it clear that non-federal landowners have a right of access . . . subject, of course, to reasonable rules and regulations."  S. Rep. No. 96-413, at 310 (excerpt attached as Exhibit A).  Further demonstrating that the "lingering legal questions" Congress wanted to resolve were not limited to access rights in Alaska, the Report notes that "a recent District Court decision in Utah (*Utah v. Andrus et al.*, C79-0037, October 1, 1979, D.C. Utah) has cast some doubt over the status of these rights."  *Id.*  (citing *Utah v. Andrus*, 486 F. Supp. 995, 1010 (D. Utah 1979) (a case involving access rights under FLPMA over federal land in Utah).  This language demonstrates that when the Senate Energy and Natural Resources Committee inserted Section 3210(a) into ANILCA its intent was for the provision to apply nationwide.[6]  That intent was clearly expressed to Congress and the public through the Committee Report.

On August 19, 1980, the Senate approved its amended version of H.R. 39 and returned it to the House for approval.  H.R. 39, 96th Cong., 2d Sess. (Aug. 19, 1980).  Debates and further proposed amendments addressing application of the access to inholdings provision occurred in the House through September and October 1980.  *See* 126 Cong. Rec. H8637-38 (daily ed. Sept. 9, 1980); 126 Cong. Rec. H10376 (daily ed. Oct. 2, 1980).  The debates repeatedly reflected an understanding that Section 3210(a) was intended to apply broadly beyond Alaska.

For example, on September 9, 1980, the Chairman of the House Forestry Committee stated as to Section 3210: "[i]t has a section granting inholders on national forest and BLM lands

---

[6] By contrast, the Committee Report described the Alaska-specific access provision, which would become Section 3170, as expressly drafted in "recognition of the fact that restrictions placed on public access on or across many federal land areas in Alaska may interfere with the ability of private inholders to exercise their right to use their lands."  *See* Ex. A, S. Rep. No. 96-413, at 248.

unprecedented access rights.  This provision apparently applies not only to Alaska but also to the entire United States." [7]  126 Cong. Rec. H8638 (daily ed.  Sept. 9, 1980) (statement of Rep. Weaver).  On October 2, 1980, Representative Udall put forth a "Scope of the Act" amendment proposal that would have limited every provision of the Act to apply exclusively in Alaska, but that amendment failed to pass.  126 Cong. Rec. H10376 (daily ed. Oct. 2, 1980).  On the same day, Representative Seiberling proposed an amendment that would have deleted Section 3210 altogether, which he called the "nationwide access amendment."  126 Cong. Rec. H10350 (daily ed. Oct. 2, 1980).  That too failed to pass.

Members of Congress thus understood Section 3210(a) to apply nationwide and stated as much on the House Floor.  Indeed, two members of Congress introduced amendments to delete the provision or limit it to Alaska—which would have achieved the result Plaintiffs now urge is implied by the statute—and both amendments failed.  The failure of these amendments "strongly militates against a judgment that Congress intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 200 (1974); *see also Int'l Broth. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*, 814 F.2d 697, 711 (D.C. Cir. 1987) (giving weight to legislative history demonstrating that Congress considered an amendment in line with the interpretation the plaintiffs urged, but ultimately "decided against the modification") (citing *Gulf Oil Corp.*, 419 U.S. at 200); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 435 (1987) (Congress did not intend a statutory construction that it expressly rejected); *Wilderness Soc'y v. Morton*, 479 F.2d 842, 862 (D.C. Cir. 1973) (finding legislative history "support[ed] the literal reading" of a statutory provision when an amendment seeking to change

---

[7] That some members of Congress appeared to overlook Section 3210(b)'s clear limitation to "public lands" *in Alaska* does not undermine their clear understanding that 3210(a) was, in fact, intended to apply nationwide.

the scope of the provision beyond its plain language was rejected).

Finally, on November 12, 1980, following the debates and failed amendment attempts, the House passed the Senate-amended version of the bill (which included Section 3210(a)) and sent it along for Executive approval. 126 Cong. Rec. H10527-52 (daily ed. Nov. 12, 1980). During final statements and recommendations on the House Floor, representatives made conflicting statements about whether Section 3210 applied nationwide. Representative Udall stated that it was "the intention of the House that this section be limited in its application to lands within Alaska." 126 Cong. Rec. H10549-50 (daily ed. Nov. 12, 1980) (statement of Rep. Udall). In contrast, Representative AuCoin stated that the provision "grants private inholders carte blanche access across national forest and public lands nationwide." 126 Cong. Rec. H10529-30 (daily ed. Nov. 12, 1980) (statement of Rep. AuCoin).

On November 20, 1980—before ANILCA had been signed into law—the author of Section 3210(a), Senator Melcher, clarified the Record by confirming that the Senate intended the access to inholdings provision in Section 3210(a) to apply nationwide. 126 Cong. Rec. S14770-71 (daily ed. Nov. 20, 1980) (statement of Sen. Melcher). Senator Melcher characterized Representative Udall's prior statement as a "fine print" attempt to effectuate in the Record what he failed to achieve by amendment, *id.*, and stated that the provision "intends outside of Alaska to provide for others who own land within or effectively surrounded by one or more units of the National Forest System . . . such rights as may be necessary to assure adequate and feasible access for economic and other purposes, subject, of course, to reasonable rules and regulations." *Id.* at S14770. "The Senate intent on the floor, in the committee report and through the entire Senate committee markup is clear. Section 1323 is not limited to Alaska and was not intended to be limited to Alaska." *Id.* Nearly two weeks later, ANILCA was signed into

17

law.  Pub. L. 96-487, 94 Stat. 2371 (Dec. 2, 1980).

ANILCA's pre-enactment legislative history thus reveals robust debate, including disagreement, over the scope and applicability of Section 3210(a).  Far from a "hid[den] elephant[] in [a] mousehole," *see* Pls.' Br. 32, the nationwide application of Section 3210(a) was a topic of hot debate on the House and Senate floors.  Plaintiffs plainly disagree with Congress's ultimate resolution of the issue, but it is clear that "the enormous significance of [Section 3210(a)] was well understood by Members of Congress when the Act was passed in [1980], contrary to the premise of the 'elephants-in-mouseholes' interpretive objection put forth by" Plaintiffs.  *See Am. Fed. of Gov't Emps. v. Gates*, 486 F.3d 1316, 1326 (D.C. Cir. 2007) (holding that a late-added statutory provision with "a huge impact" might have been a "statutory elephant" but was not "hidden," and thus the plain language of the provision controlled).

**B.  Contemporaneous legislative history further confirms Section 3210(a)'s nationwide applicability**.

Finally, ANILCA's robust pre-enactment legislative history set forth above is further buttressed by contemporaneous legislative history.  Just one day after ANILCA was signed into law, a report summarizing prior debate on the Colorado Wilderness Act in the House Conference Committee showed that the House agreed that Act did not require a provision providing access to non-federal inholdings in Colorado because such access was already provided by ANILCA.  *See* H.R. Rep. No. 1521, 96th Cong., 2d Sess., 126 Cong. Rec. H11675, H11687 (daily ed. Dec. 3, 1980).  The report explained:

> Section 7 of the Senate amendment contains a provision pertaining to access to non-Federally owned lands within national forest wilderness areas in Colorado. The House bill has no such provision. The conferees agreed to delete the section because similar language has already passed Congress in section [3210] of [ANILCA].

*Id.*

This contemporaneous statutory history is relevant and persuasive.  *See Nat'l Veterans*

*Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 139 (D.D.C. 2018) ("A statute's

legislative history includes its 'statutory history,' a comparison of the current statute to its

predecessors and differences between their language and structure, . . . along with relevant

committee reports, hearings, or floor debates." (citing *Powerex Corp. v. Reliant Energy Servs.,*

*Inc.*, 551 U.S. 224, 231-32 (2007)).  Indeed, in litigation over the application of Section 3210(a)

just one year after its passage, the Ninth Circuit held that the provision applies nationwide,

relying in part on the legislative history underlying the Colorado Wilderness Act.  *See Mont.*

*Wilderness Ass'n,* 655 F.2d at 957 (finding the history of the Colorado Wilderness Act tips

"decidedly in favor of the broader interpretation of [Section 3210]," particularly because "[t]he

conferees . . . had an intimate knowledge of" ANILCA).  The Tenth Circuit reached the same

conclusion more than a decade later.  *See United States v. Jenks*, 22 F.3d 1513, 1516 n.3 (10th

Cir. 1994) (finding the history of the Colorado Wilderness Act "impl[ies] that § 3210(a) applies

outside of Alaska").

At bottom, the plain language of the statute establishing access rights across "the

National Forest System," without any express limitation to the State of Alaska, is strongly

bolstered by legislative history showing Congress was well aware Section 3210(a) would apply

nationwide and even rejected attempts to adopt Plaintiffs' preferred interpretation through

amendment.

## III.    FLPMA Does Not Override Nor Obviate the Need for Section 3210(a) of ANILCA

Plaintiffs acknowledge that "FLPMA Title V gives the Secretary of Agriculture the

*discretionary* authority to grant rights-of-way over national-forest lands."  Pls.' Br. at 25

(emphasis added) (citing 43 U.S.C. § 1761(b)(3)).  But Plaintiffs then suggest that "no provision

of ANILCA expressly limits FLPMA or any other federal public land law as they apply outside

of Alaska," *id.* at 30, and that "[t]here was no legislative need when ANILCA was later adopted, and no statement in the legislative history that anything in ANILCA would apply outside Alaska," *id.* at 26. Plaintiffs are wrong on both counts.

First, the plain text of Section 3210(a) provides that:

> *Notwithstanding any other provision of law*, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: *Provided*, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a) (emphasis added). Through its "notwithstanding" clause, the provision expressly amended FLPMA's right-of-way provisions for access to inholdings completely surrounded by National Forest System lands. The United States Court of Appeals for the District of Columbia has "interpreted similar 'notwithstanding' language in other cases to supersede all other laws, stating that '[a] clearer statement is difficult to imagine.'" *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) (quoting *Crowley Caribbean Transp., Inc. v. United States,* 865 F.2d 1281, 1283 (D.C. Cir. 1989) (subsequent citations omitted)). Section 3210(a) is thus not an ambiguous "amendment[] by implication," as Plaintiffs improperly argue. *See* Pls.' Br. 30. Rather, Section 3210(a) clearly supersedes FLPMA in creating a non-discretionary right of access to private inholdings completely surrounded by National Forest System lands.

Second, ANILCA's legislative history also directly undermines Plaintiffs' "FLPMA-is-enough" argument. *See* Pls.' Br. 5, 8, 24-26. Congress included Section 3210(a) in ANILCA precisely because it was concerned that pre-ANILCA authorities—including FLPMA—were *not* doing enough to provide access to inholdings, so it wanted to "resolve any lingering legal

questions by making it clear that non-Federal landowners have a right of access."  Ex. A, S. Rep. 96-413, at 310.  Plaintiffs' subjective belief that there was "no legislative need" to amend FLPMA or otherwise guarantee access to private inholdings on National Forest System lands, *see* Pls.' Br. 26, is irrelevant.  Moreover, while Section 3210(a) of ANILCA amends FLPMA by creating a nationwide right of access *notwithstanding* any provisions in FLPMA that might render such access discretionary, this amendment does not "negate" or "repeal" FLPMA, as Plaintiffs suggest. [8]  *See id.* at 30, 32.  Section 3210(a) addresses the specific issue of a right to access inholdings completely surrounded by National Forest System lands, while FLPMA continues to apply broadly to agency management of use and access on all public lands. Plaintiffs may believe that FLPMA provided sufficient access across federal land and disapprove of ANILCA Section 3210(a) as a policy matter, but Congress reached the opposite conclusion. *See* Ex. A, S. Rep. 96-413, at 310.

## IV.    Numerous Courts Have Held that Section 3210(a) Applies Nationwide

In the decades since ANILCA's passage, the Ninth and Tenth Circuits have expressly and repeatedly held that Section 3210(a) applies to private access claims nationwide.  *See Mont. Wilderness Ass'n*, 655 F.2d at 957 ("We conclude that [a subsequent conference report] tips the balance decidedly in favor of the broader interpretation of [Section 3210(a)]."); *Fitzgerald Living Tr. v. United States*, 460 F.3d 1259, 1262 n.5 (9th Cir. 2006) ("ANILCA is not limited to national forest land located in the state of Alaska, but rather applies nationwide."); *Adams v.*

---

[8] In fact, the Forest Service interprets ANILCA and FLPMA together and, when ANILCA requires that access be granted, the Forest Service makes the grant using a FLPMA easement or special use authorization.  "For the purposes of this analysis, ANILCA serves as an enabling statute, which establishes the applicant's right to access their inholding (it does not authorize or require the authorization of utilities), while FLPMA is the mechanism used to provide special-use authorization to occupy, use, or traverse National Forest System lands, for access and for the use of utilities or powerlines."  ROD at 5, FS-007122; *see also* ROD at A-2, FS-007154.

*United States*, 255 F.3d 787, 793 n.7 (9th Cir. 2001) (applying Section 3210(a) to an inholding in Nevada and explaining that "ANILCA applies nationwide"), *abrogated on other grounds by Wilkins v. United States*, 143 S. Ct. 870 (2023); *Jenks*, 22 F.3d at 1516 n.3 ("Section 3210(a) of ANILCA applies to all National Forest System lands, not just those in Alaska."); *Peper v. U.S. Dep't of Agric.*, 478 F. App'x 515, 521 (10th Cir. 2012) (applying ANILCA's access provision in Colorado).

This Court has likewise applied Section 3210(a) outside Alaska. *See Nat'l Parks Conservation Ass'n v. United States*, 177 F. Supp. 3d 1, 16 n.6 (D.D.C. 2016) (applying ANILCA's access provision to National Forest System land in North Dakota and explaining that it is "applicable to national forests throughout the United States"). Other district courts across the nation have also applied ANILCA's access provision beyond Alaska. *See, e.g.*, *Fitzgerald v. United States*, 932 F. Supp. 1195, 1201 n.2 (D. Ariz. 1996) ("ANILCA applies to all National Forest System lands."); *Delany v. U.S. Forest Serv.*, No. CV 04-2352-PCT-MHB, 2007 WL 9724565, at *3-4 (D. Ariz. July 10, 2007) (quoting *Fitzgerald Living Trust*, 460 F.3d at 1262 n.5, for the proposition that Section 3210(a) applies outside Alaska); *Delany v. U.S. Forest Serv.*, No. CV062265PHX-SMM, 2007 WL 4219436, at *3 n.6 (D. Ariz. Nov. 28, 2007) ("Despite its title, this provision of ANILCA [Section 3210(a)] applies nationwide"); *Rocky Mountain Wild*, 2020 WL 1529181, at *3 (holding Section 3210(a) applied in Colorado and stating that "Congress's intent to provide a uniform standard as to inholders' rights would undoubtedly be frustrated if the statute only applied to one state."); *Overland Ditch & Reservoir Co. v. United States*, No. 98 N 1149, 1999 WL 1087478, at *11 (D. Colo. June 17, 1999) ("This provision [Section 3210(a)] applies to inholdings located in all Forest Service lands, not just those in Alaska."); *Mountain States Legal Found. v. Espy*, 833 F. Supp. 808, 817 (D. Idaho 1993) ("The

provisions of ANILCA apply outside of Alaska."); *Idaho Conservation League v. Caswell*, No. CV 95-394-S-MHW, 1996 WL 938215, at *6 (D. Idaho Aug. 12, 1996) (applying Section 3210(a) to an access right dispute in Idaho); *Breaker v. United States*, 977 F. Supp. 2d 921, 937 (D. Minn. 2013) ("The right of access granted by ANILCA applies nationwide."); *McFarland White Ranch v. Schafer*, No. CV-08-77-BLG-RFC-CSO, 2009 WL 1392108, at *6 n.4 (D. Mont. May 15, 2009) ("Despite the narrow title of the Act, this section applies nationwide."); *Cabinet Res. Grp. v. U.S. Forest Serv.*, No. CV 00-225-M-DWM, 2004 WL 966086, at *3 (D. Mont. Mar. 30, 2004) ("16 U.S.C. § 3210[] applies to all National Forest lands, not just those in Alaska."); *Wilderness Watch v. King*, No. CV 12-102-M-DWM, 2013 WL 3331264, at *6 (D. Mont. July 1, 2013) ("The right of access granted by ANILCA applies nationwide . . . and was intended by Congress to extend not only to National Forest lands but also to National Forest lands designated as wilderness. *See* Sen. Rpt. 96–413 at 310 (Nov. 14, 1979)."); *Mont. Mine Land Holdings, LLC v. U.S. Dep't of Agric.*, No. CV 17-65-H-CCL, 2018 WL 1640866, at *3 (D. Mont. Apr. 5, 2018) (explaining that in the access to inholdings context, ANILCA "applies to all National Forest System lands"); *United States v. Jenks*, 804 F. Supp. 232, 235 n.2 (D.N.M. 1992) ("ANILCA applies to all National Forest System lands, not just those in Alaska"), *rev'd in part on other grounds*, 22 F.3d 1513 (9th Cir. 1994); *Friends of Columbia Gorge, Inc. v. U.S. Forest Serv.*, 546 F. Supp. 2d 1088, 1102 (D. Or. 2008) ("ANILCA is not limited to land in Alaska, but has nationwide application."); *Est. of Giovacchini v. Comm'r of Internal Revenue*, 105 T.C.M. (CCH) 1179, 2013 WL 275540, at *27 (T.C. 2013) ("16 U.S.C. sec. 3210 provides that it applies to all National Forest Systems land"); *Dobbs v. U.S. Forest Serv.*, No. CIV-16-112-RAW, 2017 WL 6598537, at *2-3 (E.D. Okla. Dec. 26, 2017) (applying Section 3210(a) in Oklahoma), *aff'd*, 810 F. App'x 644 (10th Cir. 2020); *Grill v. Quinn*, No. 2:10-CV-0757 GEB

GGH, 2013 WL 3146803, at \*15 (E.D. Cal. June 18, 2013) (applying Section 3210(a) in California), *R&R adopted*, No. 2:10-CV-0757 GEB GGH, 2013 WL 3992117 (E.D. Cal. Aug. 1, 2013), *aff'd*, 748 F. App'x 122 (9th Cir. 2019).

The caselaw Plaintiffs attempt to marshal in support of their preferred interpretation of Section 3210(a) is unpersuasive.  In *Amoco Production Company v. Village of Gambell*, 480 U.S. 531 (1987), the Court found the obligation in ANILCA's Section 810 (now 16 U.S.C. § 3120) to consider impacts on subsistence land uses before issuing mineral leases on public lands in Alaska did not apply to Outer Continental Shelf lands.  *Id.* at 546-48.  The decision turned on the meaning of the phrase "in Alaska," *see id.*, did not address Section 3210(a), and did not hold that all of ANILCA Title XIII applies only in Alaska, as Plaintiffs incorrectly posit.  *See* Pls.' Br. 4, 12, 27.

Nothing in the Supreme Court's holdings in the *Sturgeon v. Frost* cases suggests that Section 3210(a) applies only in Alaska either.  *See* Pls.' Br. 27.  At issue in the *Sturgeon* cases was whether a general National Park Service ("NPS") regulation preventing the use of hovercraft on all navigable waters within NPS unit boundaries also applied on NPS units in Alaska. *Sturgeon v. Frost*, 139 S. Ct. 1066, 1077 (2019); *Sturgeon v. Frost*, 136 S. Ct. 1061, 1068-69 (2016).  The Supreme Court found the NPS could not apply its rule to the river at issue because Alaska owned the riverbed.  The Court relied on ANILCA Section 103(c), which provides that lands held by the State but located within the boundaries of NPS units in Alaska are not subject to general NPS public land regulations.  *Sturgeon*, 139 S. Ct. at 1078.  The *Sturgeon* cases do not address Section 3210, much less expressly or implicitly undermine the holdings in *Montana Wilderness* and *Jenks* that section 3210(a) applies outside of Alaska.

Likewise, in *Yellen v. Confederated Tribes of the Chehalis Reservation*, 141 S. Ct. 2434,

2439-40 (2021), the Court analyzed the definition of "Indian Tribe" under a different statute, the Alaska Native Claims Settlement Act.  And in *United States v. Srnsky*, 271 F.3d 595, 602-03 (4th Cir. 2001), the Fourth Circuit expressed doubt about the applicability of Section 3210(a) outside of Alaska but expressly declined to rule on the issue.  271 F.3d at 603 ("[W]e need not decide the geographic scope of ANILCA today.").  Plaintiffs' argument, relegated to a footnote, that some of the district court cases cited above did not uphold the Forest Service's challenged action *after* applying Section 3210(a) outside of Alaska does not speak to nor undermine the threshold question of the provision's nationwide applicability.  *See* Pls.' Br. 23 n.7.   Nor does Plaintiffs' lengthy discussion of the extent of the Forest Service's discretion to regulate the use of National Forest System lands *after* applying Section 3210(a) in Colorado.  *See id.* at 35-36.

At bottom, Plaintiffs correctly concede that of all the cases they rely on to support their preferred interpretation, "none specifically addressed the access provision in Section 3210." *Id.* at 13.  In contrast, the caselaw overwhelmingly and explicitly holds—consistent with the Forest Service's longstanding interpretation—that Section 3210(a) applies to National Forest System lands nationwide.

## V.  The Forest Service's 1991 Regulations Reasonably Interpret Section 3210(a) as Applying Nationwide

Finally, Plaintiffs fail to meaningfully grapple with the fact that the Forest Service's nationwide interpretation of Section 3210(a) dates back to 1991, when the agency promulgated regulations adopting this interpretation following a notice and comment rulemaking process that included public involvement.  Instead, perhaps realizing that successive, as-applied challenges to the Forest Service's 1991 regulatory interpretation of ANILCA could be precluded by collateral

25

estoppel,[9] Plaintiffs frame their Amended Complaint to suggest that this interpretation was reached, for the first time, in the Berlaimont Estates Access Decision by current decisionmakers on the White River National Forest and U.S. Department of Agriculture officials in Washington, D.C. *See, e.g.*, Pls.' Br. 22. In so doing, Plaintiffs ignore that governing Forest Service regulations have applied this nationwide interpretation of Section 3210(a) (and bound the Forest Service to that interpretation) since the regulations were promulgated in 1991.

Thus, to the extent the Court finds Section 3210(a) ambiguous, it should consider that the Forest Service has already reasonably interpreted this statutory provision—through public rulemaking—as applying to private access claims throughout the National Forest System. 56 Fed. Reg. 27,410, 27,411 (June 14, 1991) (noting the access provisions are "applicable to all applications for access to non-Federal land across National Forest System land"). In light of the plain language of the statute and the robust legislative history described above, the Forest Service's long-standing interpretation of Section 3210(a)'s nationwide applicability is patently reasonable and is entitled to deference in the face of any statutory ambiguity.[10] *Chevron v. NRDC,* 467 U.S. 837, 844 (1984).

---

[9] *See Brodie v. Burwell*, No. 15-322 (JEB), 2016 WL 3248197, at *8 (D.D.C. June 13, 2016) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Plaintiffs have raised the exact issue raised here, the nationwide applicability of Section 3210(a) as interpreted in the Forest Service's 1991 regulations, in a prior case. *Compare* Am. Compl. ¶ 190 ("Application of ANILCA to National Forest System lands outside of Alaska is precluded by the plain language of the statute), *with Rocky Mountain Wild v. Dallas*, No. 19-cv-1512 (D. Colo.), Compl. ¶ 273, ECF No. 1 ("Application of ANILCA to National Forest System lands in Colorado is precluded by the plain language of the statute.").

[10] Plaintiffs' assertion that canons of construction related to the Property Clause of the United States Constitution are inapt, *see* Pls.' Br. 21, because Section 3210(a) of ANILCA grants a clear statutory right of access that is not implied or created by state or common law, but rather by the express terms of the statute.

## <u>CONCLUSION</u>

ANILCA's provision providing a statutory right of access to inholdings across "the National Forest System" has applied nationwide since the Act was passed in 1980.  Since 1991, the Forest Service has reasonably applied Section 3210(a) to all National Forest System lands under its governing regulations.  For the forgoing reasons, the Court should hold that ANILCA's statutory access provision applies nationwide, grant Federal Defendants' Cross-Motion for Partial Summary Judgment, and deny Plaintiffs' Motion for Partial Summary Judgment.[11]

Respectfully submitted this 18th day of August, 2023.

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Emma L. Hamilton*
EMMA L. HAMILTON
Trial Attorney
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tele: (303) 844-1361
Fax: (303) 844-1350
emma.hamilton@usdoj.gov

*Attorney for Federal Defendants*

---

[11] As the Parties' Cross-Motions for Partial Summary Judgment on this issue will resolve only portions of one of nine claims for relief asserted in Plaintiffs' Amended Complaint, Federal Defendants submit that any consideration of remedy is inappropriate at this stage.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August, 2023, a copy of this foregoing document was filed electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as reflected on the Notice of Electronic Filing.

*/s/ Emma L. Hamilton*
Emma L. Hamilton